

**EXHIBIT E**

May 1, 2023

Emory Healthcare, Inc.
Attn: Scott D. Boden, MD
VP for Business Innovation/Strategic Partnership Development
1365 Clifton Road, N.E.
Atlanta, Georgia 30022

> **RE:** **Head Team Physician Letter Agreement between the Atlanta Falcons Football Club, LLC ("Atlanta Falcons" or "Team"), Emory Healthcare, Inc. ("EHC") and The Emory Clinic, Inc. ("Emory Clinic" or collectively with EHC "Emory") and the Team Physicians specified below**

Dear Mr. Peterson and Dr. Boden:

This letter confirms a relationship between the Atlanta Falcons, Emory Healthcare, Inc., and The Emory Clinic, Inc., Dr. Brandon Mines, Dr. Destin Hill and Dr. Kyle Hammond, for the personal services of Kyle Hammond, M.D., an employed physician of The Emory Clinic (or such other physician as Emory and the Team agree to substitute in accordance with Section 3 below) to perform certain services as the Atlanta Falcons Head Team Physician, along with Destin Hill, M.D. and Brandon Mines, M.D., each an employed physician of The Emory Clinic (or such other physician as Emory and the Team agree to substitute in accordance with Section 3 below) to perform certain services as an Atlanta Falcons Primary Care Sports Medicine Specialist services for the Atlanta Falcons, as applicable, as set forth herein and in the attached Exhibits. (The physicians so acting from time to time, the "Team Physicians"). All Terms and Conditions set forth in the balance of this letter are based on such intent. Terms and conditions to which we have agreed for the 2023 –2027 NFL seasons (including playoffs) will be found below and in the attached Exhibits A, B and C of this document.

1.     Term.  This Agreement is for a five (5) year term, effective as of the date hereof, and shall end on the conclusion of the 2027 NFL season (including playoffs) (the "Term"). Notwithstanding the foregoing or any other provision in this Agreement, either party may cancel this Agreement without cause with thirty (30) days written notice and with cause with ten (10) days written notice. In accordance with the foregoing sentence, the Atlanta Falcons shall have the right to cancel this Agreement in its entirety, or shall have the right to cancel all or any portion of the services to be provided by either or both Team Physicians, individually, as the circumstances so merit with respect to a termination for cause, or in the Atlanta Falcons sole and absolute discretion with respect to a termination without cause. In the event of early termination of this Agreement for any reason, the Atlanta Falcons'

sole and exclusive liability to any party hereto shall be to pay for services properly performed prior to the effective date of termination and for the pro-rata portion of the compensation due for the services of Team Physicians as set forth in Exhibits A-B, as applicable, prior to the effective date of termination.  For purposes of this Section 1, the term "cause" means any of the following has occurred: (1) the other party's material breach of this Agreement, breach of fiduciary duty to the other, to the extent such duty is applicable, breach of applicable governing law as such law relates to the obligations of each party under this Agreement, breach of Team policies applicable to such party, or refusal to follow the lawful directives of the Team (subject to the Team Physician's exercise of their independent medical judgment) that is not corrected (to the extent correctable) within ten (10) days after delivery of written notice with respect to such breach; and (2) in case of termination by the Atlanta Falcons, (i) indictment of one or both Team Physicians for or conviction of a felony or any crime involving fraud, dishonesty, or moral turpitude: (ii) misappropriation of funds or material property of the Atlanta Falcons or any Falcons "Affiliates" by Emory and/or Team Physicians; (iii) material dishonesty, disloyalty, intentional or willful misconduct or omission in their obligations hereunder by Emory and/or Team Physicians; or (iv) a formal claim of medical malpractice from a current or former Falcons player or employee arising from and related to the medical services provided under this Agreement.  For purposes of this Agreement, a "Falcons Affiliate" is defined as any entity controlling, controlled by or under common control with Atlanta Falcons.

2. <u>Independent Contractor</u>.  It is expressly understood and agreed that in the performance of this Agreement, Emory Clinic (and the Team Physicians) are independent contractors of the Falcons in all matters and respects and will be acting in their own separate capacity and not as an agent, employee, partner, joint venture or associate of the Falcons.  It is further agreed that The Emory Clinic shall be solely responsible for all of the withholding taxes, unemployment taxes and Worker's Compensation insurance premiums on its employees and personnel, including without Limitation the Team Physicians.

3. <u>Replacement of Team Physicians</u>.

   a. Upon six (6) months' prior written notice, to be effective on the two (2) year or three (3) year anniversary from the Effective Date (each, a "Trigger Date"), Emory may propose a substitute doctor licensed in the State of Georgia to practice medicine and board certified, to replace the Head Team Physician (the "Proposed Doctor").  The Falcons shall have the right in their sole and absolute discretion to accept or reject the Proposed Doctor. If the Falcons accept the Proposed Doctor as the Head Team Physician, then Emory will use reasonable efforts to cause the Proposed Doctor to acknowledge and agree to the terms and conditions of this Agreement within thirty (30) days of the acceptance by the Falcons. Upon execution by the Proposed Doctor of the terms and conditions of the Agreement, the Head Team Physician will be replaced and all references to the Head Team Physician will reference the Proposed Doctor. If the Falcons reject the Proposed Doctor or the Proposed Doctor does not execute the terms and conditions of this Agreement, the Head Team Physician shall stay in place subject to the terms and

2

conditions of this Agreement other than the first part of this Section 3a (for clarity, Emory does not have a continuous right to propose a new Head Team Physician).

b.  Upon sixty (60) days' prior written notice, to be effective any time after the one (1) year anniversary of the Effective Date, Emory may propose a First Associate Team Physician licensed in the State of Georgia to practice medicine and board certified, to work alongside the Head Team Physician ("Proposed First Associate Team Physician"). The Falcons shall have the right in their sole and absolute discretion to accept or reject the Proposed First Associate Team Physician and his/her scope of work. If the Falcons accept the Proposed First Associate Team Physician and parties agree on the scope of work between the doctors, then Emory will use commercially reasonable efforts to cause the Proposed First Associate Team Physician to acknowledge and agree to the terms and conditions of this Agreement and scope of work within thirty (30) days of the selection. Upon execution by the Proposed First Associate Team Physician of the terms and conditions of the Agreement, all references to the Team Physicians in the Agreement will also include the First Associate Team Physician. The Falcons will continue to pay the doctor fees set forth in Exhibit A and the Team Physicians will split such fees as determined by Emory. If the Falcons reject the Proposed First Associate Team Physician, the Proposed First Associate Team Physician does not execute the terms and conditions of this Agreement, or Emory and the Falcons do not agree on the scope of work between the Head Team Physician and First Associate Team Physician, the Head Team Physician shall remain in place subject to the terms and conditions of this Agreement other than the first part of this Section 3b (for clarity, Emory may only propose an Associate Team Physician once). The parties may at any time agree in writing to an alternative mutually-agreed title for the First Associate Team Physician, subject to the approval of the NFL. Following any change in title of the First Associate Team Physician, every reference in this Agreement to the First Associate Team Physician shall thereafter be deemed to refer to the new mutually-agreed title.

c.  If either Team Physician becomes unable to provide the services described in Exhibit A or B due to termination of employment by Emory, resignation of employment by the Team Physician, death or disability, then Team shall have the right to request a new Head Team Physician and/or Primary Care Sports Medicine Specialist, as applicable, employed by The Emory Clinic and mutually agreed upon by the Parties. If Emory does not make the Falcons request available, and cause the requested Team Physician(s) to acknowledge and agree to the terms and conditions of this Agreement within thirty (30) days of the request, the Falcons will have the right to terminate this Agreement immediately.

d.  If, in Team's sole discretion, Team becomes dissatisfied with any Team Physician, then at any time, Team shall have the right to request a new Head Team Physician and/or Primary Care Sports Medicine Specialist, as applicable, employed by The Emory Clinic. If Emory does not make the Falcons request available and cause the requested Team Physician(s) to acknowledge and agree to the terms and conditions

3

of this Agreement within thirty (30) days of the request, the Falcons will have the right to terminate this Agreement immediately.

    e.   Nothing in Sections 3 (a-d) limits any termination rights pursuant to Section 1.

4.    <u>Intentionally Omitted.</u>

5.    <u>Insurance</u>. Throughout the Term of this Agreement, including any extension hereof, the Emory Clinic will obtain and maintain, at its own expense, the following coverages for Team Physicians: (i) a professional liability insurance policy written on a claims made basis covering any bodily injury or death arising out of actual or alleged malpractice by Emory or either Team Physician in amounts not less than $10,000,000 per occurrence and $15,000,000 annual aggregate coverage; (ii) a worker's compensation insurance policy covering Emory's employees involved in performing the Services for the Falcons pursuant to this Agreement, with limits as required by the State of Georgia and with Employer's Liability coverage with limits not less than $100,000 each accident, $100,000 disease-each employee and $100,000 disease-policy limit; and (iii) Umbrella Liability insurance with limits not less than $1,000,000 each occurrence shall apply in excess of the primary Employer's Liability policy limits.  All such insurance required above shall have a rating of not less than A-/IX by A.M. Best Rating Company or be through a program of self-insurance, provided that such self-insurance program is formally structured and funded based on annual independent actuarial loss projections.  Should any of the insurance policies be written on a claims-made basis, insurance requirements shall survive the expiration of the Agreement and extended coverage shall be afforded for at least two (2) years after the expiration of this Agreement.

6.    <u>Indemnification</u>. Each of Emory Clinic and Emory Healthcare (each an "Emory Indemnifying Party" and collectively the "Emory Indemnifying Parties") agrees to defend, indemnify and hold harmless the Falcons as well as the Falcons' Affiliates and their respective officers, directors and employees, together with their successors and assigns (each a "Falcons Indemnified Party" and collectively the "Falcons Indemnified Parties") from any third party claim, damage, loss, expense, liability, obligation, action or cause of action (including reasonable attorney's fees) which a Falcons Indemnified Party may or might sustain, pay or suffer, by reason of any negligence, malpractice, tort, violation of law or intentional misconduct or claim of negligence, malpractice, tort, violation of law or intentional misconduct by Team Physicians and/or an Emory Indemnifying Party that relate to the services provided under this Agreement. For purposes of this section, players, coaches and Team personnel shall be considered third-parties. In matters in which the Falcons Indemnified Parties are not a party, Emory shall pay or reimburse the Falcons Indemnified Parties for all reasonable attorneys' fees and expenses the Falcons Indemnified Parties incur, in connection with the Falcons Indemnified Parties' response to subpoenas, depositions, discovery demands, and other inquiries arising from suits, proceedings, legislative or regulatory hearings, investigations, or other civil or criminal proceedings in which Emory and/or any doctors or other medical personnel employed or contracted by Emory is a party, subject, or target, provided however, Emory may select the counsel for the representation in order to ensure it would be covered by its insurer, subject

to the Falcons' approval, which will not be unreasonably withheld or delayed.  The Falcons (the "Falcons Indemnifying Party")(the Falcons Indemnifying Party and the Emory Indemnifying Party, will each be referred to as the "Indemnifying Party" as applicable) agree to indemnify, defend and hold harmless Emory, as well as Emory's trustees, officers, managers, members, employees, agents and attorneys (the "Emory Indemnified Parties") ( the Emory Indemnified Parties and the Falcons Indemnified Parties will each be referred to as the "Indemnified Parties", as applicable), from any third party claim, damage, loss, expense, liability, obligation, action or cause of action (including reasonable attorney's fees) which the Emory Indemnified Party may or might sustain, pay or suffer, by reason of any negligence, malpractice, tort, violation of law or intentional misconduct or claim of negligence, malpractice, tort, violation of law or intentional misconduct by the Falcons or its employees or contractors that relate to the services provided under this Agreement. In matters in which the Emory Indemnified Parties are not a party, the Falcons shall pay or reimburse the Emory Indemnified Parties for all reasonable attorneys' fees and expenses the Emory Indemnified Parties incur in connection with the Emory Indemnified Parties' response to subpoenas, depositions, discovery demands, and other inquiries arising from suits, proceedings, legislative or regulatory hearings, investigations, or other civil or criminal proceedings in which the Falcons and/or any employees or medical personnel employed or contracted by the Falcons is a party, subject, or target, provided however, the Falcons may select the counsel for the representation in order to ensure it would be covered by its insurer, subject to Emory's approval, which will not be unreasonably withheld or delayed.  Notwithstanding the foregoing, the Indemnifying Party reserves the right to choose legal counsel to represent it at its own expense for any purpose, including investigation and/or litigation of any claim, or potential claim, made against the Indemnifying Party.  This Section shall survive the termination of this Agreement.

7.    Entire Agreement. This Agreement and the attached exhibits contain the entire agreement between the parties with respect to the subject matter of this Agreement and may be amended only by a writing signed by both parties hereto.

8.    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.

9.    Force Majeure. No Party to this Agreement shall be liable for failure to perform any duty or obligation that such Party may have under this Agreement where such failure has been occasioned by any act of God, fire, strike, work stoppage, inevitable accident, war or any cause outside the reasonable control of the party who had the duty to perform.

10.    Execution and Counterparts. This Agreement may be executed simultaneously in one or more counterparts each of which shall be deemed an original, but all of which together shall constitute one in the same instrument

11.    Assignment. This Agreement may not be assigned by any party without the prior written consent of Emory and the Atlanta Falcons; provided however that the Atlanta Falcons shall be free to assign this Agreement in the event of a change of control, and Emory may assign this Agreement to any successor in interest to Emory's business operations and facilities,

whether by virtue of a merger, sale or contribution of assets or other business combination or transaction.

12.  Conflict.  If there is a conflict between the terms of this Agreement, with attachments, and the terms of Team's policies or procedures, the terms of this Agreement shall control.

13.  Falcons Policy and Procedure Changes.  Falcons shall notify Emory of any changes in its applicable policy and procedures that affect this Agreement.

14.  NFL Rules.  This Agreement and the rights granted herein are expressly subject to the League Rules.  As used herein, "League Rules" means the Constitution, By-Laws and any other agreements or policies of the National Football League and its subsidiaries and affiliates, as well as any rulings and or orders of the NFL Commissioner, as they exist on the date hereof and as they may be modified in the NFL's sole discretion during the Term hereof.  Team and Emory expressly agree and acknowledge that the terms of this Agreement shall be modified to the extent any provision of the League Rules requires such a modification in order to make this Agreement comply with the Leagues Rules.

15.  Notices.  Any notice or other communication made or contemplated by this Agreement to be in writing will be deemed to have been received by the party to whom it is addressed (i) upon actual receipt at the office of such party in the case of notices sent by courier or delivery service; or (ii) three (3) days after it is deposited in the United States mail, postage prepaid, return receipt requested to such party.

To Atlanta Falcons:
Atlanta Falcons Football Club
4400 Falcon Parkway
Flowery Branch, Georgia 30542
Attn:  Terry Fontenot, General Manager

With a copy to the General Counsel
Mercedes-Benz Stadium
1 AMB Drive
Atlanta, Georgia 30313
Attn: General Counsel

To Emory Healthcare:
Emory Healthcare, Inc.
1440 Clifton Road
Atlanta, Georgia 30322
Attn:  Dane Peterson, Interim CEO

To Emory Clinic:
The Emory Clinic, Inc.
1365 Clifton Road, N.E.
Atlanta, Georgia 30033

Attn:  Ira Horowitz, Physician Group President

To Hammond:
Kyle Hammond, M.D.
1968 Hawks Lane
Atlanta, Georgia 30329

To Mines:
Brandon Mines, M.D.
1968 Hawks Lane
Atlanta, Georgia 30329

To Hill:
Destin Hill, M.D.
4450 Falcon Pkwy
Flowery Branch, Georgia 30542

A copy of any notice sent to Emory Healthcare, the Emory Clinic, Dr. Hammond or Dr. Mines pursuant to this section must be sent to:

Office of the General Counsel
Emory University
101 Administration Building
201 Dowman Drive
Atlanta, Georgia 30322

Either party may change said addresses by written notice to the other at any time during the Term by giving written notice to the other in accordance with this section.  All notices shall be effective upon receipt.

16.    Designation. The parties hereto acknowledge and agree that this Agreement does not provide Emory or either Team Physician the right to indicate in any way, express or implied that Emory or either Team Physician are sponsors of (or have any right to use the marks of) the Atlanta Falcons.  Emory and the Team Physicians shall not use the Atlanta Falcons team marks for promotional use with respect to medical/healthcare services without the Atlanta Falcons prior written consent; provided however, that notwithstanding the foregoing, Team Physicians shall be permitted to acknowledge their relationship as the Atlanta Falcons Head Team Physician and/or Primary Care Sports Medicine Specialist, as applicable, on their individual business cards and individual web pages which reside inside the Emory Healthcare website since employees of Emory are not permitted to have personal websites.  The Falcons further agree that they will not use Emory names or marks without Emory's prior written consent, provided, however, that the Falcons may acknowledge the relationships described herein.

7

17.    (a)    <u>Compensation for Personal and Administrative Services to be Provided by Team Physicians.</u> In exchange for the services provided by the Team Physicians set forth on Exhibits A and B hereto, the Falcons shall pay The Emory Clinic the compensation set forth on Exhibits A and B.  The parties acknowledge and agree that the Falcons shall have no independent obligation to, and shall not, pay Team Physicians directly for the services set forth herein.  The Emory Clinic shall be responsible for the compensation of Team Physicians for their services under this Agreement in accordance with any applicable employment agreements between them and The Emory Clinic, applicable policies of The Emory Clinic and Emory Healthcare, and in full compliance with all applicable federal and state laws and regulations.  Each Team Physician shall release and hold the Falcons harmless from and against any failure or refusal by the Emory Clinic to pay or reimburse them for any compensation that may be due and owing to them for services provided pursuant to this Agreement.

(b)    <u>Arrangements for Payment of Medical and Surgical Services.</u>  In the event that Team Physician, in the exercise of their independent medical judgment, deem it advisable for any Falcons player or employee to obtain services from an Emory Healthcare medical provider (a hospital facility, clinic or physician) for further medical or surgical treatment that is related to a work injury or illness and such individual is admitted or referred for such treatment, the Falcons agree to pay to Emory Healthcare the specified rates for those medical and surgical services as set forth on Exhibit C, and pursuant to the terms and conditions set forth in Exhibit C.  For purposes of Exhibit C, the Falcons are the "Payer" and Emory Healthcare is the "Provider".

18.    <u>Worker's Compensation Arrangements:</u>

(a) <u>Falcons' Worker Compensation Services</u> – Compensation for surgical and other services provided by Team Physicians, or other Emory Healthcare providers, in connection with injuries to Falcon players, coaches and personnel ("Employees") covered by Worker's Compensation insurance will be paid on a fee-for-services basis pursuant to the Georgia State Board of Worker's Compensation fee schedule, unless specified otherwise in Exhibit C attached hereof, and such services shall be directly billed to the Falcons' Worker's Compensation Payer, when applicable.  For purposes of this Agreement and all Exhibits hereto, "Payer" shall mean Falcons' Worker's Compensation carrier or third party administrator which is responsible for paying for worker's compensation claims for services provided to Falcons players, coaches and personnel and for which such carrier or third party administrator administers plan per the terms of the Georgia State Board of Worker's Compensation.

(b) <u>Non-Worker's Compensation Services</u> – Compensation for services provided by Team Physicians, or other Emory Healthcare providers for illnesses, conditions, or injuries to Falcons Employees that are not work-related or are otherwise not covered by Worker's Compensation insurance, will be billed to the person's healthcare insurance carrier as provided through the Falcons' benefit plan and the carrier's allowance will be accepted if Emory Healthcare is an in-network participating provider. Emory Healthcare shall be entitled to accept insurance payments and collect patient co-pays and/or co-

insurance for third party coverage as dictated by the patient's managed care or third party insurance benefit plan, as applicable.

19.    <u>Designated Facilitator.</u>  To facilitate the ability of Emory to implement its agreement set forth herein concerning the treatment of individuals and the provision of specified VIP services as contemplated, Emory shall designate an individual (or individuals) to work directly with the Falcons' designated individual to coordinate the arrival, admission, and discharge of each such individual and other issues that require operational decisions throughout the terms of this Agreement.  As of the Effective Date, such individuals are Kyle Hammond, M.D. (or his designee) for Emory and Jake Pfeil, Director of Sports Medicine for the Falcons.

20.    <u>Compliance with Laws</u>.  The Emory Clinic, Emory Healthcare, and Team Physicians agree to comply with the applicable provisions of state and federal law and other applicable rules and regulations of any and all governmental authorities relating to (i) the licensing and regulation of physicians and hospitals, (ii) the prescription, possession or administration of controlled substances or (iii) any all services with this Agreement.

21.    <u>Confidentiality</u>. Emory and Team Physicians agree that they shall comply with all applicable state and federal laws, regulations, and ethical principles concerning confidentiality of all patient medical records.

If this letter properly sets forth our understanding, please indicate by signing below.

ATLANA FALCONS FOOTBALL CLUB, LLC

_____

Terry Fontenot
General Manager

EMORY HEALTHCARE, INC.

THE EMORY CLINIC, INC.

_____

Ira Horowitz, MD
Physician Group President

**ACCEPTED AND AGREED:**

By:_____

Kyle Hammond, M.D.

By:_____

Brandon Mines, M.D.

By:_____

Destin Hill, M.D.

10

**EXHIBIT A**
**Services and Compensation for Services of Kyle Hammond.**

1.   Compensation – As compensation for the services to be performed by Kyle Hammond, M.D., under this Agreement, the Falcons agree as follows:

   (a)   Annual Payment – The Falcons will pay to the Emory Clinic the following compensation for services as defined herein ("Services") and the time expended in the performance of the Services by Dr. Kyle Hammond in semi-monthly installments as follows:

   - $155,000 for the year beginning the Effective Date and ending February 9, 2024; and
   - ;
   - $162,000 for the year beginning February 10, 2024 and ending February 9, 2025; and
   -
   - $169,000 for the year beginning February 10, 2025 and ending February 9, 2026; and
   -
   - $176,000 for the year beginning February 10, 2026 and ending February 9, 2027; and
   -
   - $183,000 for the year beginning February 10, 2027 and ending February 9, 2028, or the day after the Atlanta Falcons' regular or post-season in 2027 playing season, whichever is later.

   Reimbursement for travel and other ordinary business expenses incurred by Dr. Hammond in performing the services contemplated herein will be made in accordance with the Falcons' standard policies. All payments of taxes on compensation shall be the responsibility of Emory Clinic and/or Hammond, as applicable.

   (b)   Tickets – The Falcons will provide The Emory Clinic four (4) season tickets for all Falcons home games (preseason, regular season and playoffs in accordance with Falcons ticket policies), plus two (2) parking passes.

2.   Services – The Services will include, without limitation, the following:

   (a)   Attend and provide medical services and coverage at all Falcons games (home and away), camp (*mini* and training camp), practices and combines as set forth below:
   - Attend all Falcons preseason, regular season and playoff games;
   - Attend the National Football League Scouting Combine; and
   - Attend training camp, mini camps, practices, workouts and tryouts on a mutually agreed upon schedule and as needed.

(b)  Furnish and/or arrange for complete medical and surgical services for any injury or illness sustained by any Falcons player or staff, including providing all Falcons players and staff with access to Emory's executive VIP services that are usual and customary for Emory to provide for elite athletes and other VIP's, which includes a bypass of the general waiting room, access to a private VIP executive suite waiting room, and access for treatment, as applicable, in the adjacent VIP executive exam room.

(c)  Be the "on-call" point person at *all* times for medical emergencies for the Falcons players and staff.

(d)  Provide and/or coordinate full orthopedic and physical examinations and wellness screenings of Falcons players and staff prior to and after each NFL season, and as needed in connection with any trades, tryouts, player acquisitions or drafts.

(e)  Provide and/or coordinate professional rehabilitation services as needed for Falcons players.

(f)  Work cohesively with the Falcons' Head Trainer and assistant trainers to provide the highest quality care to Falcons players as contemplated by this Agreement.

(g)  Maintain medical files on all personnel treated and/or examined by you or the other Team Physicians in a format utilized by the NFL or as reasonably requested by the Falcons in a manner compliant with all applicable federal and state laws regarding privacy of patient information.

(h)  Coordinate and supervise a group of first-rate physicians who are leaders in their respective fields (each subject to the reasonable approval of the Falcons) for the ongoing health of players, and management of their injuries, to include: Primary Care, Internist, ENT/Head, Ophthalmology, Plastic Surgery, Spine, Dentist, Nutritionist, etc.  The other Team Physicians selected by you shall be required to:

 i.   maintain an unrestricted license to practice medicine in Georgia;
 ii.  maintain good standing with the Medical Board of the State of Georgia;
 iii. Perform all professional services in accordance with all applicable laws and regulations;
 iv.  maintain prevailing standards of care, medical ethics and practice protocols as established by the AMA;

(i)  Maintain DEA licensure and oversee the possession, prescription and administering of controlled substances for the benefit of Falcons personnel in a manner that complies with all applicable laws; and

(j)  Responsible for coordinating and scheduling of all club imaging needs, to include MRI's, on a preferred scheduling basis.

12

**EXHIBIT B**
**Services and Compensation for Dr. Brandon Mines and Dr. Destin Hill**

1.  <u>Compensation</u> – As compensation for the services to be performed by Dr. Brandon Mines, M.D. and/or Dr. Destin Hill, M.D. under this Agreement, the Falcons agree as follows:

    (a)  <u>Annual Payment</u> – The Falcons will pay to the Emory Clinic the following compensation for services as defined herein (the "Services") and the time expended in the performance of those services by Dr. Mines and/or Dr. Hill in semi-monthly installments as follows:

    -   $100,000 for the year beginning the Effective Date and ending February 9, 2024; and

    -   $105,000 for the year beginning February 10, 2024 and ending February 9, 2025; and

    -   $110,000 for the year beginning February 10, 2025 and ending February 9, 2026; and

    -   $115,000 for the year beginning February 10, 2026 and ending February 19, 2027; and

    -   $120,000 for the year beginning February 10, 2027 and ending February 9, 2028, or the day after the Atlanta Falcons' regular or post-season in 2027 playing season, whichever is later.

    Reimbursement for travel and other ordinary business expenses incurred by Dr. Mines and/or Dr. Hill in performing the services contemplated herein will be made in accordance with the Falcons' standard policies. All payments of taxes on compensation shall be the responsibility of Emory Clinic and/or Dr. Mines and/or Dr. Hill, as applicable.

    (b)  <u>Tickets</u> – The Falcons will provide The Emory Clinic with six (6) season tickets for all Falcons home games (preseason, regular season and playoffs in accordance with Falcons ticket policies), plus three (3) parking passes. For clarity, the Falcons training staff will provide two (2) season tickets and one (1) parking pass, and the sponsorship and/or marketing department will provide four (4) season tickets and two (2) parking passes.

2.  <u>Services</u> – The Services during the Term of this Agreement will include, without limitation, the following:

    (a)  Attend and provide medical services and coverage at all Falcons games (home and away), camps (mini and training camp), practices and combines as set forth below:

13

- Attend all Falcons preseason, regular season and playoff games;
- Attend the National Football League Scouting Combine; and
- Attend training camp, *mini* camps, practices, workouts and tryouts on a mutually agreed upon schedule as needed.

(b)    Furnish and/or arrange for complete medical and surgical services for any injury or illness sustained by any Falcons player or staff, including providing all Falcons players and staff with access to Emory's executive VIP services that is usual and customary for Emory to provide for elite athletes and other VIP's, which includes a bypass of the general waiting room, access to a private VIP executive suite waiting room, and access for treatment, as applicable, in the adjacent VIP executive exam room.

(c)    Be the "on-call" point person at all times for medical emergencies for the Falcons players and staff. Assist, under the guidance of Head Team Physician, to provide appropriate primary care sports medicine coverage in your absence.

(d)    Assist, under the guidance of Head Team Physician, physical examinations and wellness screenings of Falcons players and staff prior to and after each NFL season, and as needed in connection with any trades, tryouts, player acquisitions or drafts.

(e)    Assist, under the guidance of Head Team Physician, professional rehabilitation services as needed for Falcons players.

(f)    Furnish and/or arrange for complete medical coverage as it pertains to all concussion related issues to include baseline testing, evaluation and following all NFL mandated protocols.

(g)    Work cohesively with the Falcons ' Head Trainer and assistant trainers to provide the highest quality care to Falcons players as contemplated by this Agreement.

(h)    Maintain medical files on all personnel treated and/or examined by you or the other Team Physicians in a format utilized by the NFL or as reasonably requested by the Falcons and in a manner compliant with all applicable federal and state laws regarding privacy of patient information.

(i)    The Team Physician will (i) maintain an unrestricted license to practice medicine in Georgia; (ii) maintain good standing with the Medical Board of the State of Georgia; (iii) perform all professional services in accordance with all applicable laws and regulations; and (iv) maintain prevailing standards of care, medical ethics and practice protocols as established by the AMA.

(j)     Maintain DEA licensure and oversee the possession, prescription and administering of controlled substances for the benefit of Falcons personnel in a manner that complies with all applicable laws.

**EXHIBIT C**

Provider (defined herein as all Emory Healthcare facilities, clinics and physicians) and Payer (as defined in Section 16(b) herein) agree to the following terms and conditions:

1. Provider shall acquire authorization from Payer for services ordered or requested prior to treatment. Payer or Falcons shall provide Provider with copies of all authorization policies and procedures prior to the effective date of such policies and procedures which are applicable to Provider.

2. Provider will use best efforts to control and monitor the utilization of resources and services but in no event shall any Provider's independent medical judgment regarding the best interests of a patient be compromised.

3. Provider will provide to Payor or its designated agent, subject to and consistent with legal requirements, medical records requested by the Payer.

4. Payer, only in representation of Falcons, shall receive Provider services and pay Provider according to the lesser of Provider's charges, Georgia State Board of Workers' Compensation Fee Schedule, or Schedule of Reimbursements listed below.

5. Provider will bill for professional services and technical charges, if applicable, for hospital services. All bills will be submitted and reimbursed based upon the tax identification number of the applicable Provider. No provider identification numbers will be required for billing. Either electronic or hard copy bills for Services rendered will be submitted to Payer, as the Payer may reasonably specify consistent with national standards. Provider shall use the HCFA-1500 or UB-92 billing forms, or future HCFA-1500 or UB-92 successor forms for all billings. Medical Providers may submit separate HCFA-1500 forms for a single episode of care requiring multiple services rendered by multiple physicians. Provider will use the universal billing form 92 (UB-92). Provider will use its best efforts to submit such claims within one hundred and twenty (120) days of the last date of service for each Employee.

6. Payment:

   (a) All claims will be due and payable by Payer or Falcons within thirty (30) days of receipt of claim. Claims shall be deemed to have been received either (a) three (3) days from the date of postmark or (b) on the date delivered if hand-delivered, sent by overnight mail or transmitted electronically. Provider will not routinely submit nor shall Payer routinely request any invoices or itemized (UB-92) bills for any

16

Services rendered except in those reasonable and/or justifiable cases in which the appropriate payment cannot be remitted by utilizing the information on the UB-92.

(b)    If Payer or Falcons contends that any claim is not subject to reimbursement in whole or in part, Payer or Falcons, as applicable, will provide written notice of such dispute ("Notice") within thirty (30) days of Providers' initial claim date, after which period, the claim will be conclusively deemed and undisputed. The Notice shall contain in reasonable detail the reason for such dispute and an itemized Listing of any information needed to resolve the dispute. Once a claim is deemed complete after a Notice (whether due to submission of additional information by Provider, by mutual agreement of the parties or otherwise), Falcons or Payer shall remit payment to Provider for such claim within thirty (30) days. If Falcons or Payer disputes a claim in part, Falcons or Payer will reimburse Provider within thirty (30) days of receipt of the claim for the part of the claim which is not disputed.

(c)    A claim shall be deemed a "Complete Claim" when (a) each data element on the HCFA-1500 or UB-92 forms (or such other billing form containing equivalent information as the parties may specifically agree) is provided.

(d)    In any situation where an overpayment was made by Falcons or Payer or Provider for services rendered, no withhold or deductions from future payments due to Provider will be taken by Falcons or Payer. Upon determination that such overpayment is due to Falcons or Payer, Provider will reimburse Falcons or Payer via check for such payment that has been determined to be owed to Falcons or Payer. In any situation where an underpayment was made by Falcons or Payer to Provider for such services rendered. Falcons or Payer will reimburse Provider via check for such payment that has been determined to be owed to Provider. Such underpayment shall be made within thirty (30) days of its identification and if not timely paid, Falcons or Payer shall pay a 10% penalty on the amount of the outstanding payment.

(e)    Interest at the rate required by law prorated for any portion of a month shall be paid beginning with the thirty-first (31st) day on the amount of any undisputed claim, in whole or in part, that remains unpaid after thirty (30) days following receipt of such undisputed claim.

(f)    Subject to Section (d) above, Falcons shall have the right to make corrective adjustments to a previous payment due to audit or otherwise and Provider shall have the right to seek underpayments; provided however, that Falcons shall have no right to make corrective adjustments and Provider shall have no right to seek underpayments after one year from the date the initial claim was paid.

17

(g)     Falcons and Payer may not deny payment for claims for services which were preauthorized or approved, including on a concurrent basis, unless the information provided to Falcons/Payer upon which the preauthorization/approval was based was fraudulent.

**Schedule of Reimbursements\*:**

| | |
|---|---|
| Outpatient Surgery (per surgical case, single and/or multiple procedures)\*\* | |
| - Facility/Technical component (all inclusive less than 23 hours) | $4,505.56 |
| - Observation (greater than 23 hours but less than 48 hours) | $63.41 |
| - Implants (Revenue Codes, 274, 275, 276, 278) will be reimbursed based on the purchase order cost to Hospital plus 10% which equates to seventy-nine percent (79%) of billed charges upon which payment will be made.  Company may validate mark-up formula by requesting purchase orders on an infrequent basis recognizing the administrative burden on EHC to produce same. | |
| - Professional Services (all inclusive with or without assistant surgeon(s) | $2,703.10 |
| - Professional Services (reconstructive surgeries, ACL, labrum, RTC) | $4,955.30 |
| - If patient requires a post-op observation beyond the normal hours of any Emory outpatient surgery center, ambulance charges to transport the patient to an inpatient facility are not included. | |

Inpatient Surgery (per surgical case, single and/or multiple procedures\*\*:

| | |
|---|---|
| - Facility/Technical component (all inclusive first day with surgical procedure) | $9,009.95 |
| - Additional days (greater than 23 hours) – standard (all inclusive) | $1,982.12 |
| - Additional days (greater than 23 hours) – ICU and/or Critical Care (all inclusive) | $2,523.44 |
| - Implants (Revenue Codes, 274, 275, 276, 278) will be reimbursed based on the purchase order cost to Hospital plus 10% which equates to seventy-nine percent (79%) of billed charges upon which payment will be made.  Company may validate mark-up formula by requesting purchase orders on an infrequent basis recognizing the administrative burden on EHC to produce same. | |
| - Professional Services (all inclusive with or without assistant surgeon(s)) | $3,964.24 |

Outpatient Observation Medical Only (non-surgical)\*\*\*:

| | |
|---|---|
| - Facility/Technical component (less than 48 hours) | $63.41 |
| - Professional Services (per diem per Physician) | $117.42 |

Inpatient Medical Only (non-surgical):

18

| | |
|---|---|
| - Facility/Technical component (all inclusive first day) | $1,982.12 |
| - Professional Services (per diem per Physician) | $117.42 |
| - Emergency Room*** | |
| - Facility/Technical component | $540.15 |

Professional Services

| | |
|---|---|
| - Office Visits (New patient, all complexity levels) | $299.43 |
| - Office Visits (Established patient, all complexity levels) | $131.52est. |

Radiology, Imaging, and Diagnostic Services:

| | |
|---|---|
| - MRI (closed or open air): | |
| o  with or without Contrast (technical component) | $1,160.15 |
| o  with or without Contrast (technical component) | $1,160.15 |
| o  Arthrogram (including injection technical component & contrast material) | $1,160.15 |
| o  Professional Component | $232.50 |
| | |
| - CT Scan: | |
| o  without Contrast (technical component) | $630.57 |
| o  with Contrast (technical component) | $540.15 |
| o  with and without Contrast | $630.57 |
| o  Professional Component | $90.42 |
| | |
| - X-ray (any view or body part): | |
| o  Technical Component | $71.63 |
| o  Professional Component | $27.01 |
| o  With Fluoroscan/3D Rendering | $278.30 |
| | |
| - Bone Scan: | |
| o  Technical Component | $135.04 |
| o  Professional Component | $44.62 |
| | |
| - Ultrasound: | |
| o  Technical Component | $63.41 |
| o  Professional Component | $27.01 |

Physical Therapy, Occupational Therapy, Speech Therapy:

| | |
|---|---|
| - Initial Evaluation | $198.45 |
| - All Inclusive Per Session per day | $152.65 |
| Platelet Rich Plasma Harvest & Injection Therapy (with or without ultrasound guidance) | $1,693.26 |

19

Pre-season cardiology physicals performed at Flowery Branch or a mutually agreed alternative location for up to 140 individuals will require an additional charge of $12,500 to cover the cost of renting echocardiography and EKG machines and operators to come to Flowery Branch and perform the testing on site.


All other covered Services not specified above will be reimbursed at a rate of 5% below of the State of Georgia workers compensation fee schedule:

- Facility/technical components
- Professional Services
- Anesthesia (technical and professional components)
- Lab/Pathology (technical and professional components)
- DME/Prosthetics/Orthotics

NOTES:

*Reimbursement for scheduled services mentioned in this agreement is for Orthopedic technical and professional services including sports, spine, and general orthopedics. All other non-orthopedic professional and technical services will be reimbursed at a rate of 5% below the State of Georgia workers compensation fee schedule.

**These rates are for the surgeon and assistant surgeon and do not include other services such as anesthesiology and radiology services.

***These services do not include any use of Radiology, Laboratory Services and/or other Procedures/diagnostic testing performed in conjunction with the ER or Observation stay.

In the event any individual claim for any inpatient hospital admission exceeds a stop-loss limit of $100,000 ("Threshold") in Provider billed charges, then the following shall apply: Payer shall compensate Hospital at 70 percent (70%) of Hospital's eligible billed charges for the entire claim (including for items and services otherwise reimbursed as per diems, case rates, etc.) In determining whether the Threshold is met, the billed charges for Carve-Outs (Revenue Codes, 274, 275, 276, 278) shall be excluded from the calculation. These Carve-outs shall be reimbursed at 79% of eligible billed charges, including when provided in conjunction with a claim meeting the Threshold.

Effective September 1, 2023 and each September 1 thereafter until either Party terminates the Agreement, all reimbursement rates specified in Exhibit C Schedule of Reimbursement shall be increased by five point five percent (5.50%). The rates reflected here are the current (9/1/22) rates.

20