EXHIBIT I

**From:** Boden, Scott D
**Sent:** Friday, July 30, 2021 7:17 AM
**To:** Mines, Brandon <bmines@emory.edu>
**Subject:** FW: [External] RE: CAU

The paper trail does not support the accusations in your earlier group email. While I understand your frustration they decided to change providers, Amy's email suggests your email was not accurate. I would suggest you owe her and the others involved an apology, but will leave that decision to you.

The admin team is likely very disappointed with your group email.


-------- Original message --------
From: "DeRosa, Amy" <aderosa@incremedical.com>
Date: 7/30/21 12:32 AM (GMT-05:00)
To: "Mines, Brandon" <bmines@emory.edu>
Cc: "Richardson, Chelsea (Sr Mgr)" <chelsea.richardson2@emoryhealthcare.org>, "KING, HAROLD D." <harold.d.king@emoryhealthcare.org>, "Mautner, Kenneth" <kmautne@emory.edu>, "Xerogeanes, John W" <jxeroge@emory.edu>, "Boden, Scott D" <sboden@emory.edu>
Subject: [External] RE: CAU

Dr. Mines,

With all due respect, I wanted to remind you of the timeline with Clark Atlanta University. Again, I am sorry that Lin Dawson has taken his frustration out on you. And I am sorry that they decided to make a change in their student health provider and have included their student athletes in that change.

To be clear, while I do advise on business matters, I cannot and will not make decisions unilaterally that contractually obligate Emory or terminate relationships. I am involved in the discussions, yes. I might have a vote or give my opinion, but the decision is not mine to make. As a good partner though, I will communicate those decisions to Emory's partners. The Clark Atlanta decision was one of those in which I opted to 'take one for the team' so to speak. If there was anger directed at anyone, I wanted it to be IncreMedical. Maybe I did that a little too well; quite frankly, I never expected that anger to come from one of our department physicians.

As far as you being unaware of our plans, let's review the timeline of our communication with CAU:

During the winter and spring, Lin Dawson communicated to Jeannine Holmes his intent to hire Athletic Trainers to be employed directly by CAU. We received it in writing from him in an email on 4/6/2021 (See 1st attachment – Clark Atlanta and Emory Introductions). In Fall 2020, Lin Dawson communicated his intention not to renew our Agreement and did not sign a new contract; we continued to help them on a month to month basis with staffing at CAU.

On May 4, Chelsea communicated our intention to this group to change our relationship and the reasoning behind that recommendation (See 2nd attachment – Re: CAU ATC Support).

EXHIBIT I

Your response: *Hello. Yes, I guess I would say we probably ought to not blame referrals for 20-21 since student athletics took a hit due to covid restrictions, but I understand the whole not getting paid thing.*

*Overall, I have no issues though with going back to only physician coverage.*

*Thanks.*

And then when we let the group know of our intent to talk with Lin Dawson, your response was:  *No problem.*

On May 10, I started to call and email Lin Dawson.  On May 27, I finally received communication from Myra Blow to schedule a call on June 1 during which Lin Dawson again communicated his intention to hire their own Athletic Trainers. Dr. Dawson left the call abruptly when I let him know about the change in our relationship.  I stayed on with Myra to discuss transition and how we could help with that.  She was not surprised at all by the decision.

On June 1, you sent an email about Lin Dawson reaching out to you. (See 3rd attachment – CAU). I responded with a synopsis of what happened on the Zoom call with him and how we were proceeding.

On June 3 you sent another email which Chelsea responded to. (See 4th attachment – FWD: CAU ATC Support)

On June 4, I sent an email to CAU which outlined that we were willing to assist with the transition, in case they needed our help. (See 5th attachment – CAU Transition Plan)

We scheduled a zoom call on 6/7/2021 with you in attendance where we had the opportunity to discuss this as a group.

On 6/9/21, Chelsea crafted a response based on our zoom call which you responded to with zero edits.

As far as questioning the business decision, here is what we reviewed:

We took 2 main things into account when making this decision. (1)  Lin Dawson had been very vocal about changing the relationship between Emory and CAU, he wanted to hire at least 2 of the 3 stationed there.  (2) Data driven decision based on Physician referral Data.

**# of MD referrals:**

| | |
|---|---|
| 2016-2017 | 1 |
| 2017-2018 | 55 (no contract for ATC's – just MD coverage) |
| 2018-2019 | 25 (started contract for ATC's) |
| 2019-2020 | 48 |
| 2020 -2021 | 1 (data for fall/winter seasons) |

We had 3 full time college/university Athletic Trainers there, plus Kim Winn (at a supervisor's salary).  That is a huge financial commitment, more than any other entity that we provide Athletic

EXHIBIT I

Trainers to.  Had CAU reimbursed as they promised, we would have had 50% of our costs for the 3 Athletic Trainers, keep in mind we staffed it with 4, but that did not happen.  We spent $0 on ATC coverage in 2017-2018 for 55 MD referrals; we spent $210,038.75 in 2018-2019 for 25 MD referrals, $299,893.10 for 48 MD referrals in the 2019-2020 school year and in 2020-2021, we spent $314,887.75 for 1 referral.

Total of CAU Contract Years

| | |
|---|---|
| Total Expense | $824,819.60 |
| Less payments of | $185,363.08 |
| Equals | $639,456.52 |
| Referrals | 74 |
| Cost Per Referral | $8,641.30 |

Even if we gave them credit for the 'Covid year' for the highest annual number of referrals (128 total referrals for 3 contract years), it would still cost $4,995.75 per referral.

We have continued to be good partners as Kim Winn is still providing coverage at CAU for a PRN rate, which we have extended several times per CAU request while they recruit.

We have also been thanked over and over again by Myra Blow, Associate Athletic Director of Internal Operations at CAU, for our professionalism and communication during this transition.

Dr. Mines, what makes me sad and angry is to have my integrity questioned after more than 18 years with Emory.  You were in the loop, you agreed with the decision when presented with the facts, and we have given you ample opportunity to participate in the transition. I am sorry that Lin Dawson made a decision that you did not agree with, none of us wanted that to happen for you or for Emory.  Had he simply renewed the Agreement, and/or stuck to the terms of our Agreement as far as compensation and staffing or had been a good partner for Emory, we would not be in this situation.

Amy DeRosa
Vice President of Client Services
IncreMedical
O: (800) 870-4540
F: (219) 365-6561
aderosa@incremedical.com

*Confidentiality Notice: This e-mail is intended only for the use of the intended recipient and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying or distribution of this e-mail, any attachments or the contents thereof is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and then immediately delete the message and any attachments from your computer.*

**From:** "Mines, Brandon" <bmines@emory.edu>
**Date:** July 29, 2021 at 8:57:33 PM EDT
**To:** "Richardson, Chelsea (Sr Mgr)" <chelsea.richardson2@emoryhealthcare.org>, "KING, HAROLD D." <harold.d.king@emoryhealthcare.org>, "Mautner, Kenneth" <kmautne@emory.edu>, "DeRosa, Amy T."

EXHIBIT I


<amy.derosa@emoryhealthcare.org>
**Cc:** "Winn, Kimberly A." <kimberly.winn@emoryhealthcare.org>, "Xerogeanes, John W" <jxeroge@emory.edu>
**Subject: CAU**


Good evening. I will try and keep this brief. I spoke to Dr. Dawson at CAU and he informed me that the school has decided to use Morehouse medicine for their student athletes. They no longer will be working with Emory. While he did say that a factor in this decision was that CAU decided to use Morehouse medicine for all of their student healthcare (and sounds like it was an incentive to bring student athletes along in that decision), he did tell me a number of times that the situation with incramedical was a factor in this decision. He told me that having the ATCs pulled out at the last minute and the school being left with no help left a sour taste in their mouth. They essentially felt mistreated. He said after that all went down, they decided to search out other options. He only had nice things to say about the medical care they received but felt they had to move in a different direction.

This outcome is exactly what I was afraid of. To say that I am angry is an understatement. While no one can predict the future under different scenarios, I can't help but wonder if this would have went this way if I was at least included properly in the original decision to pull the emory ATCs out of the school. We have just lost an incredible opportunity for community engagement and a chance to show that we partner well with our HBCUs here in town. We have lost an awesome teaching experience for our fellows and residents. In any case, as much as I am angry I am sad. Sad that we as a sports medicine team cannot communicate better about major decisions as it affects the schools we take care of. I have been working with that school for a long time and for this to go this way is terrible. Let me reiterate….no one told me that we were going to remove all the ATCs from the school that I am the medical director at. I challenge anyone to tell me we would  do that with any high school we work with. Even if we wanted to do that, a conversation would have been had with the doctor taking care of that school.

Anyway, that's it.  Please, let us all remember that we are awesome and the "major player" in town as far as sports medicine, but don't think for a minute that someone else isn't waiting to snatch things from us when we take our assets for granted.

Have a good evening.

Brandon Mines