IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DR. BRANDON A. MINES, | ) | |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION FILE NO. |
| | ) | 1:24-CV-02408 ELR-CMS |
| | ) | |
| EMORY HEALTHCARE, INC., | ) | |
| THE EMORY CLINIC, INC., | ) | |
| EMORY UNIVERSITY SCHOOL | ) | |
| OF MEDICINE, THE ATLANTA | ) | |
| FALCONS FOOTBALL CLUB, | ) | |
| LLC, DR. SCOTT BODEN, and | ) | |
| DR. KENNETH MAUTNER, | ) | |
| in their individual and | ) | |
| professional capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES[1]

NOW COMES Plaintiff Dr. Brandon A. Mines ("Plaintiff" or "Dr. Mines"),

by and through the undersigned counsels of record, and brings this, his Second

Amended Complaint for Damages against Emory Healthcare, Inc. ("Emory

Healthcare"), The Emory Clinic, Inc. ("Emory Clinic"), Emory University School

---

[1] Plaintiff's Second Amended Complaint incorporates by reference the same lettered Exhibits (A-L) from his original Complaint filed on June 1, 2024 (Doc. 1).

of Medicine ("Emory Medical") (collectively "Emory" or "the Emory Defendants"), The Atlanta Falcons Football Club, LLC, ("Atlanta Falcons"), Dr. Scott Boden ("Defendant Boden" or "Boden"), and Dr. Kenneth Mautner ("Defendant Mautner" or "Mautner") in their individually and professional capacities (collectively "the named Defendants") and shows the court as follows:

## PRELIMINARY STATEMENT

1.

This is an action for monetary damages against Emory Healthcare, the Emory Clinic, Emory Medical, Dr. Scott Boden, Dr. Ken Mautner, and the Atlanta Falcons, for race discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), defamation, and related state law claims.

2.

Plaintiff Dr. Brandon A. Mines is a highly accomplished and respected board-certified family medicine and sports medicine physician with 20 years of experience. Despite his exemplary qualifications, demonstrated expertise, and unwavering commitment, Dr. Mines found himself ensnared in a progressively hostile work

2

environment at Emory, facing a barrage of unjust treatment, unlawful misconduct, racial discrimination, and retaliatory actions.

3.

Since 2005, Plaintiff's contributions to Emory have been marked by unparalleled dedication and professionalism. However, instead of recognition and advancement, Dr. Mines encountered repeated instances of discrimination and marginalization. Despite being the most qualified candidate, Plaintiff was consistently overlooked for leadership opportunities in favor of white physicians. His supervisors, Defendants Boden and Mautner, white physicians, rather than acknowledging his expertise, branded him with offensive, stereotypical labels such as "angry" and "aggressive," further perpetuating a hostile work environment.

4.

The discriminatory atmosphere fostered by Defendant Boden and Defendant Mautner, not only violated Plaintiff's rights under Title VII and Section 1981 but also inflicted severe emotional distress and defamation upon him. Plaintiff's opposition to race discrimination at Emory was met with retaliatory actions, further exacerbating the toxic work environment he was forced to endure, until Emory terminated Plaintiff via constructive discharge.

3

5.

On May 11, 2023, the abrupt termination of Plaintiff from his distinguished position as the Head Team Medical Physician for the Falcons sent shockwaves through the medical and professional sports communities. This termination, devoid of any substantive explanation or valid cause, tarnished Plaintiff's impeccable reputation and undermined diversity and inclusion efforts within Emory and the NFL.

6.

As the only Black Head Team Medical Physician in the entire NFL, Plaintiff's termination raised serious questions about fairness, equality, and unlawful racial bias within Emory and the Falcons. The termination stifled Plaintiff's promising career trajectory and eroded trust within the sports medicine community at Emory. The ripple effects of this unlawful termination are far-reaching, casting doubt over Emory's and the Falcons' commitment to diversity and inclusivity and creating a culture of uncertainty and fear among its Black physicians.

7.

Compounding the malicious discrimination Plaintiff endured, Emory and the Falcons failed to compensate Plaintiff, thus breaching their contract with Plaintiff. Defendants' pattern of financial exploitation, in conjunction with Defendants'

discriminatory practices, underscores the urgency for accountability and redress in this action.

## **PARTIES**

8.

Plaintiff Dr. Brandon A. Mines is a natural person and resident of the State of Georgia. Plaintiff submits himself to the jurisdiction of this court by filing this Verified Complaint. Plaintiff is a former employee of Emory. At all relevant times herein, Plaintiff met the definition of an "employee" under all relevant federal and common law and statutes.

9.

Emory Healthcare, Inc., is a domestic nonprofit corporation registered in the State of Georgia. Emory Healthcare may be served through its designated representative for Service of Process at 201 Dowman Drive, 101 Administration Building, Atlanta, GA, 30322. Emory Healthcare is responsible for the actions of its employees, agents, and representatives acting on its behalf through the legal doctrines of respondeat superior and vicarious liability. This Court has personal jurisdiction over Defendant Emory Healthcare because Emory Healthcare conducts substantial business within this district and engages in acts within this district that give rise to the claims alleged in this Complaint.

10.

The Emory Clinic, Inc. is a Georgia nonprofit corporation. The Emory Clinic may be served through its designated representative for Service of Process at the Office of the General Counsel at 201 Dowman Drive, 101 Administration Building, Atlanta, GA, 30322. The Emory Clinic is responsible for the actions of its employees, agents, and representatives acting on its behalf through the legal doctrines of respondeat superior and vicarious liability. This Court has personal jurisdiction over the Emory Clinic because it conducts substantial business within this district and engages in acts that give rise to the claims alleged in this Complaint.

11.

Emory University is a Georgia nonprofit corporation. Emory University School of Medicine is a division of Emory University. Emory School of Medicine may be served through its designated representative for Service of Process at the Office of the General Counsel at 201 Dowman Drive, 101 Administration Building, Atlanta, GA, 30322. Emory Medical is responsible for the actions of its employees, agents, and representatives acting on its behalf through the legal doctrines of respondeat superior and vicarious liability. This Court has personal jurisdiction over Emory Medical because it conducts substantial business within this district and engages in acts within this district, giving rise to the claims alleged in this Complaint.

6

12.

The Atlanta Falcons Football Club, LLC, is a domestic limited liability company that owns and operates the Atlanta Falcons professional football team. The Atlanta Falcons is a wholly owned subsidiary of Atlanta Falcons Holding Company, LLC. The Falcons may be served through its designated representative for Service of Process at 4400 Falcon Parkway, Flowery Branch, GA, 30542. The Falcons are responsible for the actions of its employees, agents, and representatives acting on its behalf through the legal doctrines of respondeat superior and vicarious liability. This Court has personal jurisdiction over Defendant Falcons because the Falcons conduct substantial business within this district and engaged in acts within this district giving rise to the claims alleged in this Complaint.

13.

Dr. Scott Boden is a natural person and resident of the State of Georgia. Defendant Boden is an employee of Emory Healthcare, the Emory Clinic, and Emory Medical, and, at all times herein, Defendant Boden met the definition of an employee, senior executive, and agent of Emory under all relevant common laws and statutes. Defendant Boden may be served with process in Atlanta, Georgia. This Court has personal jurisdiction over Defendant Boden because Defendant Boden resides in this

judicial district, conducts substantial business within this district, and engages in acts within this district giving rise to the claims alleged in this Complaint.

14.

Dr. Kenneth Mautner is a natural person and resident of the State of Georgia. Defendant Mautner is an employee of Emory Healthcare, the Emory Clinic, and Emory Medical, and, at all times herein, Defendant Mautner met the definition of an employee and agent of Emory under all relevant common laws and statutes. Defendant Mautner may be served with process in Brookhaven, Georgia. This Court has personal jurisdiction over Defendant Mautner because Defendant Mautner resides in this judicial district, conducts substantial business within this district, and engages in acts within this district, giving rise to the claims alleged in this Complaint.

## SUBJECT MATTER JURISDICTION

15.

Federal jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiffs' rights under Title VII of the Civil Rights Act of 1964, and Section 1981 of the Civil Rights Act of 1866. The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

8

## VENUE

16.

Pursuant to 28 U.S.C. §§1391(a)(2) and (b)(2), venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices and tortious conduct alleged herein, occurred in and around Atlanta, Georgia.

## ADMINISTRATIVE PREREQUISITES

17.

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 12, 2023, against the Emory Defendants alleging violations of Title VII. [2]

18.

Plaintiff amended his Charge on or around March 11, 2024, to add the Atlanta Falcons, Dr. Boden, and Dr. Mautner as respondents, as well as claims for retaliation against the Emory Defendants after filing his EEOC complaint as well as internal complaints with Emory Healthcare's DEI office. [3]

---

[2] Exhibit A, Original EEOC Charge of Discrimination, dated and submitted on June 12, 2023 (docketed on July 18, 2023).
[3] Exhibit B, Amended EEOC Charge, dated and submitted on March 11, 2024 (docketed on April 9, 2024).

9

19.

On or around May 3, 2024, the EEOC issued a Notice of Right to Sue to Plaintiff, entitling an action to be commenced within ninety (90) days of receipt of that notice.[4]

20.

This Complaint is being commenced within ninety (90) days of receipt of the Notice of Right to Sue. Accordingly, Plaintiff has met all prerequisites to the filing of this suit.

## **FACTUAL ALLEGATIONS**

21.

Plaintiff Dr. Brandon A. Mines is a board-certified family medicine and sports medicine physician who received his Bachelor of Science from Morehouse College and Doctor of Medicine from the University of Wisconsin-Madison. Plaintiff completed his fellowship in sports medicine at The University of California, Los Angeles.

22.

Plaintiff is exceptionally well-respected and experienced in the professional

---

[4] Exhibit C, EEOC Notice of Right to Sue, dated May 3, 2024.

athletic realm, with vast knowledge in treating sports-related injuries, particularly concussion diagnosis and management, and is active in research and education.

23.

As an active member of the American Medical Society for Sports Medicine, Plaintiff is an in-demand speaker and has presented at various national conferences, again lecturing on issues related to his focused clinical interest. In late 2022, Dr. Mines co-authored the chapter "Sports-Related Concussions in Children" in the "Routledge Handbook of Coaching Children in Sport" by Martin Tomes and Ruth Jeans.

24.

Plaintiff is an adjunct professor at Morehouse School of Medicine, where he leads diversity and pipeline initiatives geared toward increasing diverse representation in the medical field with a focus on sports medicine.

25.

Above and beyond his professional capacity, Plaintiff is a loving and devoted husband and father to three young sons (ages 4, 4, and 2) and a role model for the youth in his community. His involvement with organizations like 100 Black Men of DeKalb underscores his commitment to social impact, particularly in environments historically affected by racism.

**Emory's Sports Medicine Practice**

26.

Emory's Sports Medicine is a division of the Department of Orthopaedics that provides a broad range of evaluation and treatment of sports injuries.

27.

Emory Sports Medicine is the official sports medicine provider for the Atlanta Falcons, the Atlanta Hawks, the Atlanta Braves, and the Atlanta Dream.

28.

Dr. Scott Boden is the Chairman of Emory Medical's Department of Orthopaedic Surgery. Upon information and belief, Boden joined Emory in 1992. He is a tenured Professor of Orthopaedic Surgery and serves as the Chief Strategy Officer for the Healthcare System and The Woodruff Health Science Center. He is also the Director of the Emory Orthopaedics & Spine Center. Boden has previously served as the first Chief Medical Officer and Chief Quality Officer of Emory University Orthopaedics & Spine Hospital and as Vice President of Business Innovation and Strategic Partnership Development for Emory Healthcare.

29.

As Chairman of the Board of Managers of the Emory Healthcare Network, Defendant Boden oversees Emory's clinically integrated network of over 3400 employed and community physicians and is interested in population health and physician performance/variability data.

30.

As the Chief Strategy Officer at Emory Healthcare, Boden is responsible for facilitating the strategic plan across the enterprise and representing Emory Healthcare in a variety of business development capacities, including hospital mergers/acquisitions, real estate development, corporate strategic partnerships, joint ventures, statewide network strategy, and technology innovation opportunities. The CSO Office also tightly coordinates strategic planning, business development, marketing, and enterprise-wide strategic project implementation.

31.

Importantly, Boden takes credit for developing and maintaining Emory's long-term relationships with the Atlanta professional sports teams, including the Falcons (NFL), Hawks (NBA), Braves (MLB), and Dream (WNBA).

32.

Defendant Dr. Ken Mautner is the Division Director of Emory's Primary Care Sports Medicine Clinic. Upon information and belief, Mautner joined Emory in 2004. He is an Associate Professor in the Department of Physical Medicine and Rehabilitation and the Department of Orthopedic Surgery at Emory University in Atlanta, GA. He is board-certified in PM&R with a subspecialty certification in Sports Medicine. Mautner is the Head Team Physician for the Atlanta Hawks and a team physician for the Atlanta Braves, Emory University, Agnes Scott College, and Pace Academy, and serves as a consulting physician for Georgia Tech athletes.

33.

Boden and Mautner are highly regarded department leaders and C-Level Executives at Emory.

**Plaintiff Joined Emory**

34.

On or August 18, 2005, Dr. Mines signed a contract with the Emory Clinic and Emory Medical as an Assistant Professor of Orthopedics, with his first day of employment on or around September 2005.

35.

Plaintiff's clinical specialties include sports injuries, concussion management, and ultrasound imaging. In addition to his core responsibilities as an Assistant Professor and primary care physician, he provides medical care and support to professional, collegiate, and elite athletes.

## Plaintiff Helped Establish Emory's Relationship with Professional Sports Teams

36.

In 2008, Plaintiff became the first Head Team Physician for the WNBA's Atlanta Dream, making him the first and longest-standing Emory physician to serve as a Head Team Physician for any professional sports team.

37.

In addition to the WNBA's Atlanta Dream, throughout Plaintiff's tenure with Emory, Plaintiff was also an Associate Team Physician for the NBA's Atlanta Hawks and Medical Director for the Harlem Globetrotters. In the past, Plaintiff served as a rotational physician for US Soccer and has traveled internationally with several teams, responsible for all medical and orthopedic care of team players.

38.

In addition to supporting professional athletes, Plaintiff also worked with collegiate athletes as Medical Director for the athletic department at Clark Atlanta University and elite high school athletes at Overtime Elite.

**Plaintiff's 12-Year Tenure with the Atlanta Falcons**

39.

Dr. Mines first started supporting the Atlanta Falcons in 2011 as a team physician. He was promoted to Head Team Medical Physician in March 2014 and continued in the role without incident or any record of performance issues until his retaliatory termination in May 2023.

40.

Over his 12 years of supporting the Atlanta Falcons, Plaintiff earned the respect and attention of those in leadership positions at the National Football League.

41.

Plaintiff was appointed as one of the 12 valued members of the NFL's Head, Neck, Spine Committee during his tenure. Plaintiff was also appointed to the NFL's Lower Extremity Soft Tissue Injury Task Force and the NFL team physician representative on a panel of 3 physicians (tasked with re-writing the disability program for retired NFL players).

42.

As a member of the NFL's Diversity in Sports Medicine Pipeline Initiative, Plaintiff was crucial in developing and implementing the NFL's HBCU medical student diversity pipeline initiative.

43.

As a member of the working group, Plaintiff helped bring to life this initiative, which brings in medical students from under-represented minorities at HBCUs and allows them to experience what it would be like to be a team doctor for an NFL team.

44.

Notably, Plaintiff was one of the few Black sports medicine physicians to lead the charge, and it was under his leadership that the Atlanta Falcons were invited to participate.

45.

On or around May 1, 2019, Plaintiff executed a multi-year contract between Emory Healthcare, the Emory Clinic, the Atlanta Falcons, and Dr. Kyle Hammond governing the roles and responsibilities of Head Team Physician coverage for the Atlanta Falcons covering years 2019 - 2022 (the "2019 Agreement").[5]

---

[5] Exhibit D, 2019 Emory Atlanta Falcons, Emory, Mines, Hammond Head Team Physician Agreement.

17

46.

The first paragraph of the 2019 Agreement spells out the purpose and intention

of the agreement as well as the parties to the agreement:

> "This letter confirms a relationship between the Atlanta Falcons, Emory Healthcare, Inc., and The  Emory Clinic, Inc., Dr. Brandon Mines and Dr. Kyle Hammond,  for the personal services of Kyle Hammond, M.D., an employed physician of The Emory Clinic (or such other physician as Emory and the Team  agree to substitute in accordance with Section 3 below) to perform certain services as the Atlanta Falcons Head Team Physician, and Brandon Mines, M.D., an employed physician of The Emory Clinic (or such other physician as Emory and the Team  agree to substitute in accordance with Section 3 below) to perform certain services as the Atlanta Falcons Primary Care Sports Medicine Specialist services for the Atlanta Falcons, as set forth herein and in the attached Exhibits.  (The physicians so acting from time to time, the "Team Physicians")."[6]

**Plaintiff Complained About the 2023 Agreement**

47.

On or around March 14, 2023, Boden emailed Plaintiff and Dr. Hammond a

multi-year agreement for the Atlanta Falcons and Emory partnership governing

years 2023–2027 ("2023 Agreement") [7] and demanded that Plaintiff sign it

immediately.

---

[6] *Id.*

[7] Exhibit E, 2023 Emory Atlanta Falcons, Emory, Mines, Hammond, Hill Head Team Physician Agreement.

48.

On March 15, 2023,[8] Boden sent Plaintiff a text message pressuring Plaintiff to sign the 2023 Agreement while representing that all parties from Emory and the Atlanta Falcons had already executed the 2023 Agreement—pointing out that Plaintiff was the only problem and if he didn't sign the agreement, he would simply be terminated.

49.

In addition to Boden, Plaintiff raised his concerns regarding CBA non-compliance with the Atlanta Falcons and the NFL. Despite bringing his concerns forward, Plaintiff was largely ignored and dismissed by Emory and the Atlanta Falcons.

50.

In addition to the 2023 Agreement's non-compliance with the NFL's 2020 CBA, Plaintiff also questioned Boden about the addition of Dr. Destin Hill to the 2023 Agreement because, for the first time since Plaintiff was promoted to Head Team Medical Physician for the Atlanta Falcons in 2014, the 2023 Agreement listed Plaintiff's role as interchangeable with Dr. Destin Hill.[9]

---

[8] Exhibit F, text messages, dated March 15 – 27, 2023, from Dr. Boden to Dr. Mines regarding 2023 Agreement.
[9] Exhibit G, Boden Mines Contract Emails, dated March 27, 2023.

19

51.

After skillfully supporting the health and safety of the Atlanta Falcons players for 12 years without complaint or incident, Plaintiff viewed the addition of Dr. Hill as an unjustified demotion of Plaintiff's leadership position.

52.

Between March 15 and March 27, 2023, Boden and Plaintiff exchanged several text messages and emails regarding Plaintiff's concerns about the 2023 Agreement, including, but not limited its non-compliance with the NFL 2020 CBA as well as Plaintiff's concerns that he was being demoted due to the addition of Dr. Destin Hill.

53.

Throughout this period, Boden's tone was rude and very demanding. It was clear that Boden simply wanted Plaintiff to sign the 2023 Agreement without questioning anything in the 2023 Agreement.

54.

On or around March 25, 2023,[10] Dr. Kyle Hammond texted Plaintiff to inform him that Boden was upset with Plaintiff for not immediately signing the 2023

---

[10] Exhibit H, text message dated March 25, 2023, from Dr. Kyle Hammond to Dr. Mines regarding 2023 Agreement.

20

Agreement. Plaintiff responded to Hammond that he had some serious concerns regarding the 2023 Agreements' compliance with the NFL's 2020 Collective Bargaining Agreement.

55.

After exchanging several text messages and emails with Boden and a phone call on March 27, 2023, Plaintiff executed the 2023 Agreement on or around March 28, 2023, but only after Boden reassured Plaintiff in writing that his position as Head Team Medical Physician with the Atlanta Falcons would continue and remain unchanged for the 2023 Season:

> *"Your team title has always been Head Team Medical, and it will not change for the 2023 Season. You are listed as a "voting" member in the NFL PS Directory that just came out, and there are only two voting members for each team, and you are the other voting member for Atlanta. Your title was not written in the prior contract, yet you still have the title. If you would like a letter from the Falcons re-affirming your title for the 2023 season, we are happy to ask them for that. The Falcons have not put any title other than Head Team Physician into the Emory Contract, and that is their choice. The CBA doesn't require the designated Head Team Medical physician to be identified in the multi-year medical contract."[11]*

56.

Upon information and belief, Emory returned the 2023 Agreement to the Atlanta Falcons on or around March 30, 2023, fully executed by all Emory parties,

---

[11] Exhibit G.

21

including Plaintiff, Hammond, Hill, and Ira Horowitz, Physician Group President of the Emory Clinic.[12]

57.

Upon information and belief, on or around May 3, 2023, the NFL required Emory and the Atlanta Falcons to insert additional language into the 2023 Agreement to bring into compliance with the NFL's 2020 CBA. Upon information and belief, the NFL required this change based on Plaintiff's discussions with the NFL about the non-compliance of the 2023 Agreement.

58.

Upon information and belief, Emory, Boden, and the Atlanta Falcons were upset with Plaintiff and treated him with disdain because he told the NFL about the 2023 Agreement's non-compliance with the NFL collective bargaining agreement. As a result, Emory and the Atlanta Falcons continued negotiating the 2023 Agreement after Plaintiff had already executed the 2023 Agreement with the express goal of terminating Plaintiff from his position.

---

[12] Exhibit E.

22

**Defendants Terminated Plaintiff as Head Team Medical Physician of the Atlanta Falcons**

59.

After 12 years of stellar performance and dedicated service, Defendants unceremoniously terminated Plaintiff from the high-profile position of Head Team Medical Physician of the Atlanta Falcons.

60.

Specifically, on May 11, 2023, during a meeting that Plaintiff requested with Terry Fontenot, General Manager of the Atlanta Falcons ("GM Fontenot"), to discuss his concerns regarding unprofessional behavior and communications by Jake Pfiel, Athletic Trainer for the Atlanta Falcons ("Pfiel"), Plaintiff was casually and informally told that he was being terminated.

61.

According to GM Fontenot, Rich McKay, President and CEO of the Atlanta Falcons, Emory, and Boden collectively decided to terminate Plaintiff's contract based on an alleged, albeit pretextual, "communication issues" with Pfiel.

62.

Upon information and belief, the Atlanta Falcons and the Emory Defendants terminated Plaintiff's contract in retaliation because he questioned the 2023

23

Agreement's compliance with the NFL's 2020 CBA and because Plaintiff dared to question Boden, Emory, and the Atlanta Falcons about unfairly demoting him by requiring him to share his hard-earned role with Destin Hill, a less experienced white man.

63.

Upon information and belief, Boden's decision to support Plaintiff's termination from the Atlanta Falcons was influenced by his low regard for Black people.

64.

Upon information and belief, Boden was jealous of Plaintiff's leadership and influence in the NFL as a Black physician, and he wanted to put him in his place as a Black man.

65.

Upon information and belief, Boden took great offense when Plaintiff dared to question him about the Atlanta Falcons' 2023 Agreement renewal. He took the opportunity to terminate Plaintiff based on a shallow and insignificant issue that would never serve as the sole basis for terminating a tenured and highly regarded physician.

24

66.

Upon information and belief, there have been other instances when white physicians transitioned from the Atlanta Falcons and were not treated in the same manner as Plaintiff. Specifically, Dr. Spero Karas (white male), physician and former Head Team Physician for the Atlanta Falcons, was given ample warning and opportunity to resolve any issues the Falcons may have had with them. When the time came for him to separate, Dr. Karas was permitted to resign from this role with dignity, thereby preserving his professional reputation at Emory and within the NFL.

**Defendants Defamed and Caused Plaintiff Irreparable Reputational Harm**

67.

Plaintiff's abrupt termination from the Atlanta Falcons fueled rumors and skepticism among the players, coaches, and members of the broader Atlanta Falcons and NFL communities.

68.

At the time of his termination, Plaintiff was the ***only Black Head Team Medical Physician in the entire NFL***. In fact, Plaintiff was exactly two weeks away from being officially appointed to the NFL Physician Society Board—a colossal honor only afforded to a minimal number of Head Team Physicians.

25

69.

The public termination of Dr. Mines, rather than a demotion, had severe implications. It stained his distinguished career with an unwarranted blemish, suggesting a grave wrongdoing on his part.

70.

The sudden absence of the esteemed Head Team Medical Physician, a familiar and highly respected figure among the team members, raised questions and ignited speculation about Plaintiff's alleged wrongdoing.

71.

Plaintiff received daily calls from his Emory colleagues, people in NFL leadership, and Atlanta Falcons players and staff inquiring about the reason for Plaintiff's termination.

72.

In the days and weeks following Plaintiff's termination, he was subsequently defamed by Emory, Boden, Mautner, and the Atlanta Falcons. Some, but not all, of the blatantly false reasons that were shared, were that Plaintiff (1) failed to maintain player medical records and (2) missed a brain tumor in one of the Atlanta Falcons players.

73.

By spreading false rumors and defaming Plaintiff, Defendants dismissed Plaintiff's outstanding 20-year professional track record and imputed the racial stereotypes that Plaintiff, as a Black man, is angry, untrustworthy, inherently less qualified, and less deserving of opportunities relative to his white counterparts.

74.

Defendants characterized Plaintiff as someone difficult to work with. This is reflective of an all too familiar "angry black man" stigma that is often cast upon Black men who are strong in their morals and convictions while white men are coined as passionate for those very same attributes.

**Emory Held Plaintiff to a Different and Higher Standard as a Black Physician**

75.

Stemming from the systemic and ingrained racial bias at Emory, the bar for Plaintiff, as a Black physician, to obtain was markedly higher than his white counterparts.

76.

Before his termination from the Falcons, Plaintiff repeatedly observed how similarly situated white physicians were afforded privileges that he was not. He has

encountered numerous instances where white physicians were not being held accountable when issues arose that objectively required addressing.

77.

In stark contrast, Plaintiff was summarily terminated from a high-profile role in the NFL without any forewarning or discussion. To the extent that there were legitimate concerns with his performance, Plaintiff was not afforded the same opportunity to cure or remediate those issues as his white counterparts.

78.

Emory and the Atlanta Falcons' discriminatory and retaliatory motivations for his termination were even more suspect, considering he was replaced by Dr. Destin Hill, a less experienced and less qualified white male physician.

**Emory Discriminated Against and Retaliated Against Plaintiff**

79.

Over his almost 20 years with Emory, Plaintiff was subjected to hostile, negative, and unwarranted feedback from Dr. Boden and Dr. Mautner, all of which included common racial stereotypes about Black men—that he was lazy, that he was not proactive, that he lacked motivation, that he was dishonest, that he was fundamentally less qualified than his white colleagues to hold leadership positions within the organization.

28

80.

Emory's culture is determined by its top leadership, which explains the presence of a toxic and discriminatory environment in the Emory Sports Medicine Department.

81.

In addition to the Atlanta Falcons termination, Plaintiff has been publicly and privately chastised by Boden in a tone and manner that Boden has never used with any of Plaintiff's white counterparts.

### *Clark Atlanta University ("CAU")*

82.

In 2021, Boden demanded that Plaintiff apologize to Amy DeRosa, (white woman) external contractor responsible for administering athletic trainers for CAU, for allegedly hurting her feelings despite the lack of evidence or justification for this accusation.[13]

83.

The context was that Plaintiff was serving as the Medical Director for Clark Atlanta University. Emory and Ms. DeRosa made decisions about team coverage without communicating adequately with Plaintiff, even though he was CAU's

---

[13] Exhibit I, Mines CAU Complaint, dated July 30, 2021.

29

Medical Director, and no final decisions should have been made about CAU without his express approval.

84.

When Plaintiff expressed his understandable frustration with how his leadership was being undermined as well as how Emory and Ms. DeRosa were treating CAU as a Historically Black College and University (HBCU), Ms. DeRosa responded condescendingly and disrespectfully, inclusive of jabs and explicit accusations against Plaintiff's honesty and trustworthiness.

85.

As part of this ordeal, Boden came to the defense of Ms. DeRosa (white woman) while simultaneously chastising Plaintiff for his "disappointing" behavior and demanded that Plaintiff apologize to Ms. DeRosa, who was neither Boden's colleague nor was she even an Emory employee. Boden did this while condoning Ms. DeRosa's attack on Plaintiff's character and integrity and her attempts to undermine Plaintiff's authority.

86.

Following this incident, Emory took a further discriminatory and retaliatory step in Plaintiff's 2021 fiscal year performance evaluation by referring to Plaintiff

as "aggressive," thereby invoking derogatory racial stereotypes and revealing racial animus towards Plaintiff as a Black man.

87.

Emory's and Boden's historically demeaning, dismissive, and disparate treatment towards Plaintiff was not just inappropriate and unprofessional; it also indicated a clear pattern and practice of racial discrimination, mainly and specifically against Black people.

88.

Boden's consistent efforts to undermine, belittle, and discredit Plaintiff's work in front of his colleagues and third parties went beyond simple workplace disagreements or conflicts. This was not simply a case of a demanding boss but rather a systemic pattern of racial discrimination and retaliation being perpetrated by one of Emory's most senior C-Level executives.

***Visitor Policy Applied Only to Dr. Mines[14]***

89.

On or around January 23, 2023, when Plaintiff was advised in writing by Chelsea Richardson, Clinic Manager, Emory Clinic, that neither his wife nor his children were permitted to visit him in the office.

---

[14] Exhibit J, Visitor Policy Complaint, dated January 23, 2023.

90.

Because it is a common practice for Emory physicians to have their families visit them at work, Plaintiff questioned Ms. Richardson about the policy, and he then complained to Dr. John Xerogeanes, his direct supervisor, on or around January 30, 2023, when it became clear that this policy was only being applied to Plaintiff as a Black physician. Sadly, Emory failed to investigate or resolve Plaintiff's complaint.

**Emory Refused to Promote and Denied Plaintiff Leadership Opportunities**

91.

Plaintiff has been passed over—time and time again—for leadership positions and opportunities for advancement at Emory. There has been a systematic denial of opportunities that are otherwise readily available to his white peers.

92.

Despite possessing qualifications and expertise surpassing his white colleagues, Dr. Mines has been conspicuously overlooked for leadership roles. This pattern is not only indicative of bias but is also direct evidence of race discrimination.

***The Atlanta Hawks***

93.

Upon information and belief, in 2015, Dr. John Xerogeanes recommended to Boden that Plaintiff be considered as the Head Team Physician for the Atlanta

Hawks. However, in 2016, when Emory officially announced their partnership with Atlanta Hawks, they appointed Kyle Hammond as Head Team Orthopedic Surgeon and Ken Mautner as Head Team Medical Physician, notwithstanding the fact that Mautner had no professional team experience.

94.

Notably, Plaintiff was not allowed to interview for the positions, and upon information and belief, Boden made the appointment decisions and rejected Dr. Xerogeanes' recommendation of Plaintiff.

### *The Atlanta Falcons*

95.

In 2011, Emory first contracted with the Atlanta Falcons as an official team physicians. Plaintiff was not informed until an email went out asking for game coverage interest, discovering Jeff Webb was given the Head Team Medical position and Dr. Spero Karas the Head Team Physician position.

96.

Upon information and belief, Boden hand-selected Dr. Webb and Dr. Spero as Head Team Physicians, even though Plaintiff was the only Emory physician with experience as a Head Team Physician for a professional team (the WNBA's Atlanta Dream).

33

97.

In 2019, Dr. Karas, an esteemed colleague and expert in the field, recommended Dr. Mines as the Head Team Physician for the Falcons directly to Boden. This recommendation was not made casually but based on Dr. Mines' stellar track record serving the Falcons with exceptional dedication and professionalism.

98.

This recommendation was well deserved and warranted, given that Dr. Mines had the longest and most expansive professional experience supporting professional sports teams at Emory, including the WNBA and NBA.

99.

Dr. Karas' endorsement of Plaintiff was significant given Dr. Karas' reputation and deep knowledge of the sector, and it further emphasized Dr. Mines' suitability and capabilities for the role in question.

100.

Emory ignored the recommendation and hired Dr. Kyle Hammond, a significantly less experienced and tenured white male. This significant endorsement, and the subsequent disregard of it, is one of many examples of Plaintiff being overlooked and rejected for positions where he was the most qualified.

## *The Atlanta Braves*

### 101.

In 2017, just like in times past, Emory contracted with the Atlanta Braves to be the team physicians, exclusively listing white physicians in the press release without consulting Black or brown physicians about their interest in serving.

### 102.

Upon information and belief, Boden was the final decisionmaker on the appointments for Head Team Physicians for the Atlanta Hawks, the Atlanta Braves, and the Atlanta Falcons.

### 103.

Every time, Boden appointed only white physicians for this leadership position. Even worse, Boden intentionally and maliciously rejected recommendations from other Emory leaders regarding Plaintiff's candidacy to be the Head Team Physician for the Atlanta Falcons in 2019 and the Atlanta Hawks in 2016.

35

## *Leadership in the Division of Primary Care Sports Medicine*

104.

Upon information and belief, Mautner was cherry-picked and given the position of Director of Primary Care Sports Medicine in 2011 without consideration of any other qualified physicians.

105.

In 2021, Plaintiff suggested to Boden the creation of a new role for himself, Co-Director of the Sports Medicine Department. Plaintiff and Mautner would lead the Sports Medicine Department together in this role. Boden said it was a good idea and that he would take it under consideration.

106.

In 2022, for the second time, Plaintiff sent an email to Boden and Mautner following up on his prior request for leadership opportunities at Emory. Plaintiff reminded them that he had been asking for a promotion since 2021. Boden and Mautner promised to prioritize Plaintiff's request.

107.

Sometime in 2023, Plaintiff discussed the co-directorship idea for the third time with Mautner. However, Plaintiff faced resistance and pushback from Mautner, who did not want to share his leadership position with Plaintiff.

36

108.

On October 5, 2023, Plaintiff complained in his annual review to Mautner and Chelsea Richardson that he kept getting the runaround from Boden and Mautner regarding the Co-Director of Sports Medicine position.

109.

On or around December 19, 2023, Mautner emailed the Sports Medicine Team announcing the creation of a "Sports Medicine Outreach Lead," which sounded eerily similar to the position Plaintiff had been requesting since 2021. Notably, however, the job description was watered down, and the position was not a leadership one.

110.

Upon information and belief, Boden and Mautner intentionally retaliated against Plaintiff by creating a lower-level position that neither acknowledged nor provided him with an appropriate role commensurate with his experience.

111.

On December 20, 2023, Plaintiff questioned Mautner about creating a position that sounded like the role he had requested since 2021. In response, Mautner confirmed that Boden decided against promoting Plaintiff to Co-Director of the Primary Sports Medicine team.

**Plaintiff filed an EEOC Charge and Multiple Complaints with Emory's Compliance Office**

112.

When Plaintiff joined Emory in 2005, he had every intention to remain with Emory until his retirement. Despite his significant contributions and established record of performance, he faced racial microaggressions as well as overt race discrimination and retaliation at the hands of Emory as well as with the Atlanta Falcons.

113.

On June 12, 2023, due to Plaintiff's growing disillusionment with Emory's discriminatory culture, Plaintiff filed an EEOC charge alleging race discrimination concerning his termination from the Atlanta Falcons.[15]

114.

On October 5, 2023, Plaintiff complained to Mautner during his annual evaluation that his termination from the Atlanta Falcons was racially motivated. Mautner assured Plaintiff that could not be the case and attempted to empathize with Plaintiff by pointing out he (Mautner) had a Black son and, therefore, fully understood everything Dr. Mines experienced as a Black man.

---

[15] Exhibits A and B.

115.

Mautner's comment was not only tone-deaf and highly offensive, but it also evidenced racial bias and insensitivity to Plaintiff's response from his direct supervisor after making an explicit complaint about race discrimination.

116.

On November 25, 2023, Plaintiff filed a formal complaint with Emory's internal Diversity, Equity, and Inclusion ("DEI") department.  After multiple emails, conference calls, and Zoom meetings, Plaintiff was eventually advised by Ruth Vaughn that Emory would not investigate his race discrimination complaint because of the overlap between his complaint and the pending EEOC charge filed.

117.

On or around February 8, 2024, Plaintiff complained to Boden and Mautner regarding insubordination and disrespect from Chelsea Richardson, Emory Clinic Manager.[16]

118.

After meeting with Plaintiff for less than five minutes on February 22, 2024, Ms. Vaughn advised Plaintiff that Emory Healthcare could not (and would not) investigate his claim because Emory Healthcare employed Ms. Richardson.

---

[16] Exhibit K, Mines Complaint Email re: Chelsea Richardson, dated February 8, 2024.

Investigator Vaughn insisted that any investigation must be handled by Emory Healthcare but failed to provide Plaintiff any direction as to how to submit his complaint to Emory Healthcare properly.

119.

Emory's mishandling of Plaintiff's complaint against Ms. Richardson was symptomatic of a more significant issue at Emory – a reminder of the **"place"** designated for a Black man, circumscribed by unwritten rules rooted in a history of exclusion and discrimination. In this instance, Plaintiff's complaint was ignored, and he was chastised for referring to Ms. Richardson as an "office manager" and informed by Mike Hattery that he should consider Ms. Richardson, a white woman and non-physician office administrator—as an **"equal."**

120.

Despite Plaintiff's repeated efforts to seek support from Emory's DEI department, Emory repeatedly refused to investigate, demonstrating their direct knowledge of and complicity in maintaining a racially discriminatory and retaliatory environment.

**Emory Pushed Plaintiff to a Breaking Point**

121.

On April 26, 2024, after enduring 12 months of severe and pervasive discrimination and retaliation, Plaintiff submitted his notice of resignation from Emory effective May 3, 2024.[17] Plaintiff provided only one week's notice to allow for a seamless transition for patients and the professional sports teams, such as the WNBA Atlanta Dream.

122.

Understandably, Plaintiff had reached his breaking point and felt he had no choice. Plaintiff's work environment at Emory had become so intolerable that he felt compelled to resign to avoid further discrimination, retaliation, defamation, and emotional harm.

123.

Plaintiff complained and repeatedly voiced his feelings of extreme concern and unsafety to Emory's internal investigation team, pointing out that the racially discriminatory comments from his colleagues and supervisors had created a toxic working environment.

---

[17] Exhibit L, Mines Resignation Email to Boden, Mautner, and Xerogenes, dated April 26, 2024.

41

124.

Over the course of the last 12 months, Plaintiff complained half a dozen times about his personal experience of racial discrimination, and despite all of his complaints, which were explicitly about discriminatory treatment, not a single complaint was thoroughly investigated, nor did Emory make any tangible effort to remediate the professional and emotional harm Plaintiff was suffering.

125.

The ongoing and incessant nature of these discriminatory and retaliatory experiences, combined with an overall sense of unsafety within the Emory culture, resulted in a racially hostile work environment where Plaintiff's identity as a Black man was continually undermined and ignored.

126.

Emory made it abundantly clear by failing to properly investigate, evaluate, or remediate Plaintiff's multiple claims of discrimination and retaliation that Emory could not (or would not) ensure a safe environment devoid of discriminatory treatment and retaliatory conduct.

**Emory Retaliated Against Plaintiff Until His Very Last Day with Emory**

127.

On or around April 26, 2024, Plaintiff submitted notice of his resignation from Emory, and only a few hours later, Boden responded as follows:

> *While **we vehemently disagree with your allegations, including those of racism and race discrimination**, we are sorry to see you go. We do accept your decision to resign your employment, faculty appointment and associated medical staff privileges. The team will begin the out-boarding process immediately.*[18]

128.

Boden's response to Plaintiff's April 26 email set the tone from the top about how Plaintiff would be treated during his last week with Emory.

129.

First, Emory allowed Chelsea Richardson to announce Plaintiff's departure in a sterile and curt email, devoid of any personal sentiment or acknowledgment of Plaintiff's 20-year contribution to the practice, which created an aura of impropriety around Plaintiff's departure.

130.

On or around April 29, 2024, which read as follows:

> *It is with regret that we inform you that Dr. Mines has chosen to leave Emory Healthcare, effective this Friday, May 3. We appreciate*

---

[18] *Id.*

43

*all Dr. Mines has done for Emory Sports Medicine over the years. Please join us in wishing him the best in his next endeavors, as he will certainly be missed. The team is working to contact patients to reschedule them accordingly. If you have specific questions on coordinate patient care, please reach out to Heather Schmidt. Leaders – please share this email with your teams accordingly.*

131.

Notably, this is the same Ms. Richardson, that Plaintiff had previously filed two race discrimination complaints against in the 12 months, neither of which were appropriately investigated or remediated by Emory.

132.

In stark contrast to the email Ms. Richardson sent about Plaintiff's departure, on or around May 13, 2024, Emory sent an email from the same department about Dr. Diya Sandu's, a non-Black physician, upcoming departure from Emory that read as follows:

*It is with mixed emotions that we announce the departure of Dr. Diya Sandhu from our team. Her last day with us will be May 31st, as she embarks on a new journey moving to California.  As she transitions to pursue a different direction for the next phase of her career, we want to express our profound thanks for the positive impact she has made. While her presence will be greatly missed, we are excited for what the future holds for her.*

*Message from Dr. Sandhu:*
*"Dear Ortho and Spine Colleagues,*

*It is with great sadness that I announce my departure from Emory spine. My time here has been nothing short of remarkable, largely*

44

*due to the incredible people I've had the privilege to work alongside. I want to express my deepest gratitude to each of you. Your support, guidance, and camaraderie have been invaluable throughout my journey here. I never imagined that I would have had the privilege to work somewhere with so much collaboration and mentorship. As a young physician I had the opportunity to learn tremendously from many of you. Your dedication and expertise, and commitment to excellent patient care have inspired me to strive for greatness in everything I do.*

*My husband and I are moving to Southern California to be close to family. I am embarking on a new chapter where I will be tasked with setting up a pain management department at a cancer pain hospital. I hope to take all the lessons learned from my time here and employ them to treat a very deserving patient population.*

*Thank you once again for everything. It's been an honor and a privilege to work alongside you all.*

*With heartfelt gratitude,*

*Diya"*

*Please help us wish her the best of luck in this new chapter and thank her for all her contributions over the last few years.*

133.

Upon information and belief, Dr. Sandhu, worked at Emory for less than five years, while Plaintiff dedicated 20 years of his life to Emory and 12 years to the Atlanta Falcons. Emory's explicit deviation from the standard practice demonstrates the discriminatory and retaliatory animus behind Ms. Richardson's email and infringes upon Plaintiff's right to a respectful exit. Even worse, it incited baseless

45

speculation regarding the reasons for the Plaintiff's resignation, thereby inflicting professional damage and emotional distress.

134.

Second, in retaliation for the Plaintiff's final race complaint and resignation, Emory executed punitive measures by unilaterally altering the Plaintiff's patient schedule. Emory removed all new patient visits, substantively reducing the Plaintiff's scheduled workload and, consequently, his anticipated final income.

135.

Emory took this action was taken without notice or consultation with Plaintiff. Just like the email announcing Plaintiff's separation, this was in stark contrast to Emory's usual practice, and there was no legitimate, non-discriminatory reason for treating Plaintiff differently than his non-Black colleagues.

136.

Emory's action to preemptively cancel Plaintiff's existing appointments and block all new patient appointments was discriminatory and retaliatory. The financial repercussions of Emory's conduct were immediate, as they ensured that Plaintiff's final paycheck would not reflect his total earning capacity.

137.

In short, Plaintiff's alleged "offboarding" during his final week of employment with Emory was characterized by a marked departure from established protocol and was designed to penalize Plaintiff for calling out systemic racism in his resignation email. It constituted a clear act of retaliation.

138.

By stripping Plaintiff of the customary courtesies and professional respects typically afforded to departing physicians, Emory has not only breached the standard professional practices but also willfully caused Plaintiff financial and reputational damage.

**The Atlanta Falcons and Emory Failed to Compensate Plaintiff for Services Performed**

139.

Per the Falcons 2019 Agreement with Emory, the Atlanta Falcons contracted to pay Plaintiff for all time expended in the performance of those services by Plaintiff in semi-monthly installments.[19] The Atlanta Falcons agreed to pay Emory for Plaintiff's services beginning February 10, 2022, and ending February 10, 2023, or

---

[19] Exhibit D

the day after the Falcons' regular or postseason in the 2022 playing season, whichever is later.

140.

In practice, as Plaintiff was an Emory employee after the Falcons compensated Emory for Plaintiff's services, Emory, in turn, compensated Plaintiff for the services he performed for the Atlanta Falcons.

141.

Because Plaintiff was under the impression that Emory and the Atlanta Falcons were renewing his contract, Plaintiff continued to provide medical care to the Atlanta Falcons players.

142.

When Plaintiff was terminated on May 11, 2023, the term under the 2019 Agreement expired on or around February 10, 2023.[20]

143.

On or around May 28, 2024, Plaintiff received his final paycheck from Emory.

144.

To date, neither the Atlanta Falcons nor Emory Healthcare, Emory Medical, or the Emory Clinic have compensated Plaintiff for professional and medical

---

[20] Exhibit D.

services he provided to the Atlanta Falcons players between February 10, 2023, and May 11, 2023.

**Emory and the Atlanta Falcons Caused Plaintiff Lifelong Harm**

145.

The Atlanta Falcons, Emory Healthcare, Emory Medical, the Emory Clinic, Dr. Boden and Dr. Mautner took intentional steps to isolate, retaliate, and marginalize Plaintiff that were professionally damaging and personally demoralizing. As a direct and proximate result of these practices, Plaintiff experienced not only professional setbacks – having his growth stymied, his competencies questioned, and his role diminished – but also experienced immense personal hardships.

146.

The public humiliation and professional degradation Plaintiff suffered from the unwarranted termination after 12 committed years supporting the Atlanta Falcons, the pervasive discriminatory and retaliatory treatment from his colleagues and supervisors at Emory, and his ultimate termination after nearly 20 years of employment at Emory, has had severe emotional, professional, reputational, and marital repercussions.

147.

The psychological toll exacted by the stresses of working within a discriminatory, retaliatory, and hostile environment caused and continues to cause sleepless nights, migraines, anxiety, and stress-induced high blood pressure. Further, the stress of race discrimination and retaliation Plaintiff experienced has resulted in negative impacts on Dr. Mines' home life and marital relationship.

148.

Plaintiff is entitled to recover damages from Emory Healthcare, Emory Medical, the Emory Clinic, Dr. Boden, and Dr. Mautner, in their professional and individual capacities. Plaintiff is entitled to damages for past, present, and future medical expenses related to the damages he received because of the Defendants' actions, specific amounts to be proven at trial, and compensatory damages for past, current, and future physical and mental suffering, pain, emotional distress, and harm, in such an amount as may be shown by the evidence and determined by the enlightened conscience of a jury.

149.

The Atlanta Falcons conspired with Emory Healthcare, the Emory Clinic, Emory Medical, and Dr. Boden to breach Plaintiff's employment agreement as well as the with Plaintiff contract with Dr. Mines. They also aided and abetted Emory,

Dr. Boden, and Dr. Mautner to racially discriminate against the Plaintiff and retaliate and defame Dr. Mines.

150.

Even worse, the Atlanta Falcons accepted the valuable benefits of Plaintiff's stellar medical care and support of their players for over three months without compensating Plaintiff for the services provided.

151.

Accordingly, Plaintiff is entitled to recover damages from the Atlanta Falcons for defamation and breach of contract, or in the alternative, unjust enrichment and quantum meruit.

## CAUSES OF ACTION

### COUNT I
### RACE DISCRIMINATION UNDER TITLE VII
*(Against Emory Healthcare, the Emory Clinic, and Emory Medical)*

152.

Plaintiff re-alleges and incorporates the factual allegations in foregoing paragraphs 1- 151 into Count I as if fully set forth herein.

153.

Title VII prohibits employers from discriminating against employees with respect to terms, conditions, benefits, or privileges of employment based on race. 42

U.S.C. § 2000e-2(a).

154.

Emory Healthcare, Emory Medical, Emory Clinic are liable for Boden and Mautner's discriminatory conduct toward Plaintiff. Boden and Mautner directly supervised Plaintiff and exercised direct and immediate discretionary control over Plaintiff's conduct, duties, and performance of duties.

155.

As a Black man, Plaintiff Mines is a member of a protected class under Title VII.

156.

Emory Healthcare, Emory Medical, Emory Clinic, Dr. Boden and Dr. Mautner intentionally and maliciously subjected Plaintiff to disparate treatment and a hostile work environment based on his race.

157.

Emory Healthcare, Emory Medical, Emory Clinic, Dr. Boden, and Dr. Mautner fostered, condoned, accepted, ratified, or otherwise failed to prevent or remedy discriminatory conduct due to race or color. Emory Healthcare, Emory Medical, Emory Clinic, Dr. Boden, and Dr. Mautner, have participated in and aided and abetted the discriminatory conduct of one another.

158.

As a direct and proximate result of Emory Healthcare, Emory Medical, Emory Clinic, Dr. Boden, and Dr. Mautner's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer economic damages, loss of opportunity, loss of reputation, and mental anguish for which he is entitled to an award of damages.

159.

Defendants' unlawful discriminatory actions constitute reckless, malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

160.

At all times relevant to this complaint, Defendants Boden and Mautner were Plaintiff's supervisors, and served Emory Healthcare, Emory Medical, and Emory Clinic in managerial capacities, while committing intentional discrimination and retaliation against Plaintiff Mines while acting within the scope of their employment.

161.

Emory Healthcare, Emory Medical, and the Emory Clinic are vicariously liable for Dr. Boden's and Dr. Mautner's discriminatory conduct toward Plaintiff.

162.

The Emory Defendants, Boden, and Mautner engaged in unlawful employment practices and discriminated against Plaintiff based on his race.

163.

The conduct complained of herein has deprived Plaintiff of equal employment opportunities and has otherwise adversely affected his status as an employee because of his race. Such discrimination has caused Plaintiff to endure long-term professional harm that cannot be undone.

164.

The racially discriminatory behavior of Defendants Boden and Mautner, both of whom were Plaintiff's supervisors, was intentionally directed at Plaintiff and was based on Plaintiff's race. Given the deliberate nature of these acts, the Emory Defendants, Boden, and Mautner bear responsibility for the general and special damages that directly ensued from each act of discrimination committed against Plaintiff based on his race.

165.

As described above, Defendants have discriminated against Plaintiff on the basis of race and/or color in violation of Title VII by (i) discriminatorily denying him promotions to which he was entitled, (ii) discriminatorily subjecting him to

54

demotions, (iii) subjecting him to discriminatory retention practices and/or termination decisions, (iv) subjecting him to disparate terms and conditions of employment, including, but not limited to, failure to promote, lack of opportunity, and harm to professional reputation and (v) subjecting him to unequal compensation relative to his white peers.

166.

The Emory Defendants, Boden, and Mautner took adverse employment actions against Plaintiff, including but not limited to failure to promote, demotion, retaliation, hostile work environment, and constructive discharge, all of which were motivated by and because of race-based considerations.

167.

The discriminatory conduct of the Emory Defendants, Boden, and Mautner, was based exclusively upon Plaintiff's race, was intentional in nature, and therefore, the Emory Defendants, Boden, and Mautner are liable for all general, special, and punitive damages proximately resulting from each discriminatory act committed against Plaintiff.

55

## COUNT II
## RACE DISCRIMINATION UNDER SECTION 1981
*(Against the Atlanta Falcons, Emory Healthcare, Emory Clinic, Emory Medical, Dr. Boden, and Dr. Mautner, in their official and individual capacities)*

168.

Plaintiff re-alleges and incorporates the factual allegations in foregoing paragraphs 1- 151 into Count II as if fully set forth herein.

169.

42 U.S.C. § 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

170.

On or around May 1, 2019, Plaintiff executed a multi-year contract between Emory Healthcare, the Emory Clinic, the Atlanta Falcons, and Dr. Kyle Hammond governing the roles and responsibilities of Head Team Physician coverage for the Atlanta Falcons covering years 2019 - 2022 (the "2019 Agreement").[21]

171.

As a Black man, Plaintiff Mines is a member of a protected class under Section

---

[21] Exhibit D.

56

1981.

172.

The Atlanta Falcons, Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner intentionally discriminated against Plaintiff on the basis of his race.

173.

Emory Healthcare, Emory Medical, Emory Clinic discriminatorily denied Plaintiff promotions to which he was entitled, based on his race.

174.

Emory Healthcare, Emory Medical, Emory Clinic, Boden, Mautner, and the Atlanta Falcons subjected Plaintiff to retention practices and/or termination decisions that were racially motivated.

175.

Emory Healthcare, Emory Medical, Emory Clinic, Boden, Mautner, and the Atlanta Falcons intentionally discriminated against Plaintiff by subjecting him to disparate terms and conditions of employment, including but not limited to, lack of opportunity and harm to his professional reputation relative to his white peers.

176.

Emory Healthcare, Emory Medical, Emory Clinic, Boden, Mautner, and the

57

Atlanta Falcons intentionally discriminated against Plaintiff when fostering a retaliatory, hostile work environment leading to Plaintiff's constructive discharge from his employment with the Emory Defendants.

177.

Emory Healthcare, Emory Medical, Emory Clinic, and the Atlanta Falcons intentionally discriminated against Plaintiff when subjecting him to unequal compensation relative to his white peers.

178.

As a direct and proximate result of all Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer economic damages, loss of opportunity, loss of reputation, and mental anguish for which he is entitled to an award of damages.

179.

Defendants' unlawful discriminatory actions constitute reckless, malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

180.

The conduct complained of herein has deprived Plaintiff of equal employment opportunities and has otherwise adversely affected his status as an employee because of his race.

181.

Defendants Boden, Mautner, Emory Healthcare, Emory Medical, Emory Clinic, and the Atlanta Falcons, acting in concert, deprived Plaintiff of the right to make, enforce, and enter into contracts and the ability to provide medical services to the Atlanta Falcons players solely because of his race as an African American in violation of 42 U.S.C. § 1981.

182.

Such discrimination caused Plaintiff to endure long-term professional harm that cannot be undone.

183.

Emory Healthcare, Emory Medical, and the Emory Clinic are vicariously liable for Dr. Boden's and Dr. Mautner's racially motivated tortious conduct.

184.

The racially discriminatory behavior of Defendants Boden and Mautner, both of whom were Plaintiff's supervisors, was intentionally directed at Plaintiff and was

based on Plaintiff's race.

185.

Defendants Boden and Mautner are liable to Plaintiff for violation of his constitutional rights under Section 1981 for the full value of his lost wages, physical, mental, and emotional pain and suffering, apprehension of fear, loss of enjoyment of life, with compensatory, and special damages to be awarded in an amount to be determined by the enlightened conscience of an impartial jury.

186.

Defendants Emory Healthcare, Emory Medical, Emory Clinic, and the Atlanta Falcons are liable to Plaintiff for violation of his constitutional rights under Section 1981 for the full value of his lost wages, physical, mental, and emotional pain and suffering, apprehension of fear, loss of enjoyment of life, with compensatory, and special damages to be awarded in an amount to be determined by the enlightened conscience of an impartial jury.

187.

Upon the award of any damages on Count 1I, including but not limited to nominal damages, Plaintiff is entitled to the full and reasonable value of all costs, time, and expense necessary to bring this case to trial and successfully prosecute same pursuant to 42 U.S.C. § 1988.

## COUNT III
## RACIALLY HOSTILE WORK ENVIRONMENT UNDER TITLE VII
*(Against Emory Healthcare, the Emory Clinic, and Emory Medical)*

188.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 151 into Count III as if fully set forth herein.

189.

Title VII prohibits employers from discriminating against employees with respect to terms, conditions, benefits, or privileges of employment based on race. 42 U.S.C. § 2000e-2(a).

190.

Emory Healthcare, Emory Medical, and Emory Clinic are liable for Boden and Mautner's race discrimination toward Plaintiff and creation of a racially hostile work environment for Plaintiff. Boden and Mautner directly supervised Plaintiff and exercised direct and immediate discretionary control over Plaintiff's conduct, duties, and performance of duties.

191.

As a Black man, Plaintiff is a member of a protected class under Title VII.

192.

Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner created, condoned, and ratified a severe, prolonged, and outrageous hostile work environment for Plaintiff in violation of Title VII.

193.

Defendant Boden persistently used coded, racially motivated language to describe Plaintiff, most commonly describing Plaintiff as "angry" and "aggressive."

194.

Defendants Boden and Mautner excluded Plaintiff from leadership and professional growth opportunities while providing leadership opportunities to less experienced white male physicians, despite Plaintiff possessing qualifications and expertise that surpass those of his white colleagues. This resulted in Plaintiff being unjustly deprived of professional advancements, opportunities for growth, and inclusivity within his career.

195.

The Emory Defendants, Boden, and Mautner retaliated against Plaintiff by creating, condoning, and ratifying a severe, prolonged, and outrageous hostile work environment for reporting race discrimination. The Emory

62

Defendants, Boden, and Mautner created this environment not only for Plaintiff but for other Black employees at Emory as well.

### 196.

The Emory Defendants', Boden's, and Mautner's retaliatory conduct was so severe and pervasive such that it would dissuade a reasonable employee from taking constitutionally protected action of reporting discrimination or supporting a discrimination complaint. Retaliation in this manner, by creating this kind of hostile work environment, is prohibited by Title VII.

### 197.

A constructive discharge is treated as an adverse employment action for Title VII purposes.

### 198.

Plaintiff's resignation was a constructive discharge because it was the direct and proximate consequence of severe and pervasive racial discrimination and retaliation that made his working environment so intolerable that a reasonable person would have felt compelled to resign.

### 199.

Defendants Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner acted with conscious disregard for Plaintiff's rights, acted with the

knowledge of or with reckless disregard for the fact that their conduct was sure to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury and/or pain, and suffering to Plaintiff.

200.

Defendants Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner ignored and failed to investigate Plaintiff's numerous complaints of race discrimination, thereby maintaining an environment that was hostile towards Plaintiff and other Black employees.

201.

The Emory Defendants knew, or should have known, about the racially discriminatory conduct of Defendants Boden and Mautner, and is, therefore, directly liable for said conduct and the resulting discrimination and hostile work environment suffered by Plaintiff.

202.

As a result of the Emory Defendants', Boden's, and Mautner's race discrimination, negligence, and retaliation, Plaintiff suffered and continues to suffer long-term harm, including physical injury, severe emotional distress, humiliation, anxiety, and other consequential damages for which he is entitled to an award of monetary damages and other relief.

203.

The Emory Defendants are joint and severally liable for all general and special damages proximately resulting from the malicious and outrageous race discrimination and resulting hostile work environment suffered by Plaintiff.

204.

On multiple occasions and throughout Plaintiff's employment, Defendants Boden and Mautner, both in their individual and official capacities as Plaintiff's direct supervisors, engaged in repeated discriminatory conduct, such that Plaintiff's work environment became intimidating, hostile, and abusive.

205.

The repeated and continuous nature of Defendant Boden's and Mautner's discriminatory conduct was the direct and proximate cause of Plaintiff's hostile work environment. Because the Emory Defendants refused to investigate or remediate the ongoing discrimination, Plaintiff was constructively discharged from Emory on May 3, 2024.

206.

Emory Healthcare, Emory Medical, and Emory Clinic are strictly liable to Plaintiff for Defendant Boden's and Defendant Mautner's creation of a hostile work

environment because Boden and Mautner were Plaintiff's supervisors, and Plaintiff resigned due their conduct, which constituted a constructive discharge.

207.

Plaintiff's race was a motivating factor in Defendant Boden's and Defendant Mautner's treatment of Plaintiff and their decision to terminate his employment constructively.

208.

Plaintiff is entitled to statutory and punitive damages because the Emory Defendants', Boden's, and Mautner's willful, wanton, and malicious conduct was the proximate cause of Plaintiff's physical and mental harm, lost wages, and professional and reputational damage, severe emotional distress, humiliation, anxiety, and other consequential damages.

**COUNT IV**
**RETALIATION UNDER TITLE VII**
*(Against Emory Healthcare, the Emory Clinic, and Emory Medical)*

209.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 151 into Count IV as if fully set forth herein.

66

210.

Title VII prohibits employers from retaliating against their employees for making good faith complaints of race discrimination. 42 U.S.C. § 2000e-3(a).

211.

Emory Healthcare, Emory Medical, and Emory Clinic are liable for Boden and Mautner's retaliatory conduct toward Plaintiff. Boden and Mautner directly supervised Plaintiff and exercised direct and immediate discretionary control over Plaintiff's conduct, duties, and performance of duties.

212.

Plaintiff opposed Boden's, Mautner's, Emory Healthcare, Emory Medical, the Emory Clinic's racially discriminatory behavior on multiple occasions, which he reasonably believed violated his rights under Title VII.

213.

Plaintiff engaged in a protected activity by reporting race discrimination to the Emory Defendants' internal DEI department, reporting race discrimination to supervisors, and filing a Charge with the EEOC.

214.

The Emory Defendants, Boden, and Mautner retaliated against Plaintiff after he filed a Charge of Discrimination with the EEOC by ignoring several complaints

of discrimination and creating a pervasively hostile work environment, which ultimately led to Plaintiff's constructive discharge.

215.

The Emory Defendants, Boden, and Mautner knew or should have known of their obligations and duties under Title VII. Yet, they violated Plaintiff's rights by retaliating against him for opposing race discrimination.

216.

The Emory Defendants', Boden's, and Mautner's retaliatory conduct following Plaintiff's EEOC Charge and each of the individual race discrimination and retaliation complaints caused Plaintiff physical and mental harm, lost wages, professional and reputational damage, severe emotional distress, humiliation, anxiety, and other consequential damages for which they are entitled to an award of monetary damages and other relief as a result of Defendants' violation of Title VII.

**COUNT V**
**RETALIATION UNDER SECTION 1981**
*(The Atlanta Falcons, Emory Healthcare, Emory Clinic, Emory Medical, and Dr. Boden, in his official and individual capacity)*

217.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 151 into Count V as if fully set forth herein.

218.

Upon information and belief, the Atlanta Falcons and the Emory Defendants terminated Plaintiff's contract in retaliation because he questioned the 2023 Agreement's compliance with the NFL's 2020 CBA and because Plaintiff dared to question Boden, the Emory Defendants, and the Atlanta Falcons about unfairly discriminating against him by requiring him to share his hard-earned role with Destin Hill, a less experienced white man.

219.

Plaintiff engaged in protected activity under Section 1981 when he filed multiple complaints opposing racial discrimination during the course of employment with the Emory Defendants.

220.

As outlined in detail herein, Plaintiff opposed Defendant's racially discriminatory behavior on multiple occasions, which he reasonably believed violated his rights under Section 1981.

221.

The Emory Defendants, Boden, and Mautner knew or should have known of their obligations and duties under Section 1981. Yet, they violated Plaintiff's rights by retaliating against him for opposing race discrimination.

222.

Plaintiff engaged in a protected activity by reporting race discrimination to the Emory Defendants' internal DEI department, reporting race discrimination to supervisors, and filing a Charge with the EEOC.

223.

The Emory Defendants, Boden, and Mautner retaliated against Plaintiff after he filed a Charge of Discrimination with the EEOC by ignoring several complaints of discrimination and creating a pervasively hostile work environment, which ultimately led to Plaintiff's constructive discharge.

224.

Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner's retaliatory conduct following Plaintiff's EEOC Charge and each of the individual race discrimination and retaliation complaints caused Plaintiff physical and mental harm, lost wages, professional and reputational damage, severe emotional distress, humiliation, anxiety, and other consequential damages for which they are entitled to an award of monetary damages and other relief as a result of Defendants' violations of Section 1981.

225.

Defendants Boden and Mautner are liable to Plaintiff for violation of his constitutional rights under Section 1981 for the full value of Plaintiff's lost wages, physical, mental, and emotional pain and suffering, apprehension of fear, loss of enjoyment of life, with compensatory, and special damages to be awarded in an amount to be determined by the enlightened conscience of an impartial jury.

226.

Defendants Emory Healthcare, Emory Medical, Emory Clinic, and the Atlanta Falcons are liable to Plaintiff for violation of his constitutional rights under Section 1981 for the full value of Plaintiff's lost wages, physical, mental, and emotional pain and suffering, apprehension of fear, loss of enjoyment of life, with compensatory, and special damages to be awarded in an amount to be determined by the enlightened conscience of an impartial jury.

227.

Upon the award of any damages on Count V, including but not limited to nominal damages, Plaintiff is entitled to the full and reasonable value of all costs, time, and expense necessary to bring this case to trial and successfully prosecute same pursuant to 42 U.S.C. § 1988.

71

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)
*(Against Emory Healthcare, the Emory Clinic, Emory Medical, Dr. Boden, and Dr. Mautner)*

228.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 151 into Count VI as if fully set forth herein.

229.

Defendants Boden and Mautner are individually liable for intentional infliction of emotional distress upon Plaintiff.

230.

Emory Healthcare, Emory Medical, and Emory Clinic are liable for Boden's and Mautner's tortious conduct (1) because Defendants Boden and Mautner are sufficiently highly placed corporate officers, owners, or principals, such that their knowledge and actions are directly imputed to Emory and (2) because Emory Healthcare, Emory Medical, and Emory Clinic had actual and constructive knowledge of Boden's and Mautner's misconduct and failed to intercede on Plaintiff's behalf.

231.

The Emory Defendants, therefore, condoned, adopted, and ratified Boden's and Mautner's discriminatory and tortious conduct towards Plaintiff, making it liable for their tortious actions.

232.

Defendants Boden and Mautner knew or should have known that their pervasive race discrimination and retaliation would be likely to cause harm, injury, embarrassment, shame, and/or would otherwise cause injury to Plaintiff.

233.

Plaintiff has suffered severe and irrepealable mental anguish and emotional distress as a direct and proximate result of Defendant Boden's and Defendant Mautner's unlawful discriminatory actions.

234.

As a direct and proximate cause of Defendant Boden's and Defendant Mautner's race discrimination and retaliation, Plaintiff experienced severe anxiety, anxiety-induced migraines, anxiety-induced high blood pressure, inability to fall or stay asleep, erosion of home life and marriage, and feelings of betrayal, grief, shame, humiliation, embarrassment, anger, disappointment, and worry.

235.

In addition to the severe mental and physical health impact, Defendant Boden and Mautner caused Plaintiff to suffer irreparable damage to his professional trajectory, as well as his professional and personal reputation.

236.

Defendant Boden's and Defendant Mautner's conduct described above was extreme, outrageous, willful, wanton, and malicious.

237.

At all relevant times, Boden and Mautner acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that their conduct was sure to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the preceding, Plaintiff is entitled to recover punitive damages.

238.

Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner are equally liable for all general and special damages proximately resulting from the malicious and intentional infliction of emotional distress and resulting pain and suffering they caused Plaintiff in an amount to be determined at trial.

**COUNT VII**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED)**
(*Against Emory Healthcare, Emory Clinic, Emory Medical, Dr. Boden, and Dr. Mautner, in their official and individual capacities*)

239.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 151 into Count VII as if fully set forth herein.

240.

Emory Healthcare, Emory Medical, the Emory Clinic, Dr. Boden, and Dr. Mautner engaged in a pattern of reckless, negligent, and/or careless conduct over the course of Plaintiff's employment with Emory, causing extensive and persistent physical injuries to Plaintiff.

241.

Emory Healthcare, Emory Medical, the Emory Clinic, Dr. Boden, and Dr. Mautner engaged in repeated efforts to protect and maintain their professional and personal reputation despite actual knowledge of the years-long race discrimination directed at Plaintiff.

242.

The Emory Defendants violated their policies, even after Plaintiff filed formal and informal complaints of race discrimination.

75

243.

The Emory Defendants compounded the race discrimination Plaintiff had already endured by willfully refusing to investigate Plaintiff's complaints of race discrimination. Despite Plaintiff's repeated requests for an investigation of race discrimination, Emory Healthcare, Emory Medical, and Emory Clinic consistently and explicitly denied Plaintiff's requests to investigate, thereby violating Plaintiff's rights and causing injury.

244.

Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner engaged in a calculated, extended, and extensive pattern of race discrimination and retaliation without redress despite Plaintiff's multiple formal and informal complaints.

245.

As a result of the careless and reckless conduct of Defendants Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner, Plaintiff has suffered extreme and continuous emotional distress so severe as to constitute a likely permanent mental and physical injury.

246.

Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner's misconduct created an unreasonable risk of causing emotional distress to Plaintiff, and the Emory Defendants, Boden, and Mautner knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

247.

As a direct and proximate result of Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner's conduct, Plaintiff has suffered and continues to suffer harm, including physical injury, severe emotional distress, humiliation, anxiety, and other consequential damages for which they are entitled to an award of monetary damages and other relief.

248.

The Emory Defendants', Boden's, and Mautner's failure to address Plaintiff's ongoing complaints caused Plaintiff physical and mental harm, lost wages, professional and reputational damage, severe emotional distress, humiliation, anxiety, and other consequential damages for which they are entitled to an award of monetary damages and other relief as a result of Defendants' violations of Title VII.

77

249.

Defendants Emory Healthcare, Emory Medical, the Emory Clinic, Boden, and Mautner are further liable to Plaintiff for punitive damages pursuant to O.C.G.A. §51-12-5.1.

## COUNT VIII
## NEGLIGENT RETENTION
*(Against Emory Healthcare, the Emory Clinic, and Emory Medical)*

250.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 151 into Count VIII as if fully set forth herein.

251.

Defendants Emory Healthcare, Emory Medical, and the Emory Clinic owed Plaintiff a legal duty of care toward its employee to exercise reasonable care and prudence in its employees' hiring, training, supervision, and retention.

252.

On June 12, 2023, Plaintiff filed an EEOC charge alleging race discrimination concerning his termination from the Atlanta Falcons.[22]

---

[22] Exhibits A and B.

78

253.

On October 5, 2023, Plaintiff complained to Mautner during his annual evaluation that his termination from the Atlanta Falcons was racially motivated. Mautner assured Plaintiff that could not be the case and attempted to empathize with Plaintiff by pointing out he (Mautner) had a Black son and, therefore, fully understood everything Dr. Mines experienced as a Black man.

254.

Mautner's comment was not only tone-deaf and highly offensive, but it also evidenced racial bias and insensitivity to Plaintiff's response from his direct supervisor after making an explicit complaint about race discrimination.

255.

On November 25, 2023, Plaintiff filed a formal complaint with Emory's internal Diversity, Equity, and Inclusion department.  After multiple emails, conference calls, and Zoom meetings, Plaintiff was advised by Ruth Vaughn that Emory would not investigate his race discrimination complaint.

256.

On or around February 8, 2024, Plaintiff complained to Boden and Mautner regarding ongoing insubordination and disrespect from Chelsea Richardson, Emory Clinic Manager.[23]

257.

Once again, Plaintiff was advised that Emory Medical and the Emory Clinic could not (and would not) investigate his claim because Emory Healthcare employed Ms. Richardson.

258.

Emory Medical and the Emory Clinic deliberately chose not to investigate Plaintiff's complaint against Ms. Richardson

259.

Despite Plaintiff's repeated efforts to seek support from Emory's DEI department, Emory repeatedly refused to investigate, demonstrating their direct knowledge of and complicity in maintaining a racially discriminatory and retaliatory environment.

---

[23] Exhibit K.

260.

After Plaintiff reported race discrimination to Dr. Mautner, Emory Healthcare, the Emory Clinic, and Emory Medical, he suffered retaliation in the form of ongoing harassment, threats, and eventually termination that was so severe, pervasive, and objectively offensive that it effectively barred him from meaningful opportunities for professional advancement.

261.

Emory Healthcare, Emory Medical, and the Emory Clinic were on notice of Plaintiff's race discrimination and of the retaliatory harassment suffered by Plaintiff at the hands of Dr. Boden and Dr. Mautner as a result of him filing complaints about his experience of racial discrimination at Emory Healthcare, Emory Medical, and the Emory Clinic, perpetuated by Boden and Mautner.

262.

In the exercise of reasonable care, Emory Healthcare, Emory Medical, and the Emory Clinic knew or should have known about Boden's and Mautner's discriminatory and retaliatory conduct. It was foreseeable that the employees would engage in the discrimination of a fellow employee, but Boden and Mautner continued in their employment.

263.

Despite all of Plaintiff's complaints, Emory Healthcare, Emory Medical, and the Emory Clinic deliberately chose not to conduct thorough investigations into his allegations of race discrimination and retaliation. into racially discriminatory treatment.

264.

Not only did Plaintiff report Boden's and Mautner's malicious, outrageous, willful, and wanton discriminatory conduct to the Emory Defendants, but he did so believing that his report would be taken seriously and that the Emory Defendants would take immediate and appropriate action to protect him.

265.

Despite the discriminatory conduct perpetrated by Boden and Mautner as direct supervisors working under the direction of the Emory Defendants, the Emory Defendants did nothing to remove, reprimand, or adequately investigate any of the allegations reported by Plaintiff against his direct supervisors, Boden and Mautner.

266.

On the contrary, the Emory Defendants allowed Boden and Mautner to continue supervising employees and remain in their leadership positions. The Emory Defendants did this despite having actual knowledge of current allegations against

Boden and Mautner for race discrimination and retaliation.

267.

Defendants Emory Healthcare, Emory Medical, and the Emory Clinic had actual and constructive knowledge of Boden's and Mautner's misconduct and the substantial likelihood that they would continue to engage in such misconduct. The Emory Defendants still failed to act in any manner to protect Plaintiff or any of his colleagues, who also reported instances of discrimination.

268.

The Emory Defendants had actual knowledge of the racially discriminatory misconduct and retaliation committed by Defendants Boden and Mautner against Plaintiff.

269.

The Emory Defendants had actual knowledge of the harm inflicted on Plaintiff after Defendant Boden's and Defendant Mautner's malicious, outrageous, wanton, and willful conduct was reported.

270.

Emory Healthcare, Emory Medical, and Emory Clinic had actual knowledge of the discrimination committed against Plaintiff, yet they still chose to keep Boden

and Mautner in supervisory and leadership positions, which they continue to hold at the time of this filing.

271.

The harm to Plaintiff from the Emory Defendants' actions and failures to act after malicious, outrageous, wanton, and willful conduct was reported was entirely foreseeable.

272.

By and through its conduct, actions, and malfeasance, Defendants Emory Healthcare, Emory Medical, and the Emory Clinic breached the above-described legal duties of care that they owed to Plaintiff.

273.

As a direct and proximate result of Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner's conduct, Plaintiff has suffered and continues to suffer harm, including physical injury, severe emotional distress, humiliation, anxiety, and other consequential damages for which they are entitled to an award of monetary damages and other relief.

274.

The Emory Defendants', Boden's, and Mautner's failure to address Plaintiff's ongoing complaints caused Plaintiff physical and mental harm, lost wages,

84

professional and reputational damage, severe emotional distress, humiliation, anxiety, and other consequential damages for which they are entitled to an award of monetary damages.

275.

Defendants Emory Healthcare, Emory Medical, the Emory Clinic, Boden, and Mautner are further liable to Plaintiff for punitive damages pursuant to O.C.G.A. §51-12-5.1.

## COUNT IX
## DEFAMATION
*(Against the Atlanta Falcons, Emory Healthcare, Emory Clinic, Emory Medical, Dr. Boden, Dr. Mautner, in their official and individual capacities)*

276.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 151 into Count IX as if fully set forth herein.

277.

The Atlanta Falcons, Emory Healthcare, Emory Clinic, Emory Medical, Dr. Boden, and Dr. Mautner defamed Plaintiff when they knowingly, intentionally, and willfully spread false, inaccurate, and misleading information regarding Plaintiff's termination as Head Team Medical Physician from the Atlanta Falcons on or around May 11, 2023, and his constructive discharge from Emory on or around May 3, 2024.

278.

Some, but not all, of the false statements were that Plaintiff (1) failed to maintain player medical records and (2) missed a brain tumor in one of the Atlanta Falcons players.

279.

Upon information and belief, all Defendants shared those and many other defamatory comments with third parties, including members of the Atlanta community, NFL leadership, Atlanta Falcons community members, and Emory employees and leadership.

280.

All Defendants made these defamatory statements with knowledge that the matters asserted were false or with reckless disregard for the falsity of the statements.

281.

All Defendants knew the statements were false. These statements went far beyond mere negligence to intentional misconduct because they were malicious and calculated to ruin Plaintiff's reputation, inflict emotional distress, and jeopardize his professional standing in the medical profession, NFL community, and other professional sports communities.

86

282.

Alternatively, the Atlanta Falcons and the Emory Defendants made the defamatory statements about Plaintiff without reasonable care to determine whether the statements were true or false.

283.

The Atlanta Falcons' statements were so obviously defamatory that harm to Plaintiff should be presumed, as such statements directly implicate Plaintiff's ability to provide patient care services to the Atlanta Falcons players as well as his Emory patients before his separation and thus tends to injure Plaintiff's trade or profession.

284.

The defamatory statements by the Emory Defendants, Boden, Mautner, and the Atlanta Falcons exposed Plaintiff to (i) reputational harm, (ii) hatred, ridicule, or contempt, and (iii) injury to his profession as a physician and providing medical and patient care to professional sports players as well as his other patients.

285.

All Defendants' statements were defamatory per se because they injured his trade, occupation, or business.

286.

When Defendants communicated these blatantly false allegations, it had far-reaching implications, damaging Plaintiff's professional reputation and mental health and undermining his credibility and integrity as a physician.

287.

All Defendants knew or should have known that their communications were false and or misleading and knew or should have known such communications would likely cause harm, injury, embarrassment, shame, and otherwise have or would cause other trouble and damage to Plaintiff.

288.

All Defendants' false and defamatory statements were intended as assertions of fact and to impart what a reasonable person would believe was factual.

289.

All Defendants' false and defamatory statements were designed to injure Plaintiff's personal and professional reputation.

290.

Plaintiff has suffered damages due to Defendants' knowingly sharing false information with third parties.

291.

All Defendants acted with actual malice, and their false and defamatory statements about Plaintiff were made with knowledge of their falsehood or reckless disregard for their truth or falsity.

292.

As a direct and proximate result of Defendants' false and defamatory statements, Plaintiff has suffered presumed damages as well as actual reputational, emotional, and professional injuries.

293.

Defendants Emory Healthcare, Emory Medical, Emory Clinic, Boden, Mautner, and the Atlanta Falcons are liable for all harm caused by defaming Plaintiff, including but not limited to physical and mental harm, lost wages, professional and reputational damage, severe emotional distress, humiliation, anxiety, and other consequential damages for which he is entitled.

**COUNT X:**
**COMMON LAW FRAUD IN THE INDUCEMENT**
*(Against Emory Healthcare, the Emory Clinic, Emory Medical, and Dr. Boden, in his official and individual capacity)*

294.

Plaintiff re-alleges and incorporates the factual allegations in foregoing paragraphs 1- 151 into Count X as if fully set forth herein.

295.

On or around March 15, 2023, Defendant Boden sent Plaintiff a text message advising that all Emory and Atlanta Falcons parties had already executed the 2023 Agreement.[24] On or around March 27, 2023, Boden assured Plaintiff, "[his] team title has always been Head Team Medical, and it will not change for the 2023 Season." [25] In reliance upon Boden's statements, Plaintiff signed the 2023 Agreement.

296.

At the direction of Emory Healthcare and the Emory Clinic, Dr. Boden fraudulently induced Plaintiff to sign the 2023 Agreement and continue to serve as the Head Team Physician for the Atlanta Falcons for approximately three months after the expiration of the 2019 Agreement.

297.

From February 2023 to May 11, 2023, Plaintiff provided valuable services to the Atlanta Falcons, including attending the NFL Combine, completing player physicals, as well as other patient care services.

---

[24] Exhibit F.
[25] Exhibit G.

90

298.

Contrary to Boden's representations to Plaintiff, Boden and the Emory Defendants never intended to honor the 2023 Agreement nor did they intend to pay Plaintiff for any of the work he performed for the Atlanta Falcons after the expiration of the 2019 Agreement.

299.

Dr. Boden's misrepresentations were material because they caused Plaintiff to perform professional services for the Atlanta Falcons that they would not have otherwise been entitled to without paying for it.

300.

Plaintiff reasonably relied on Boden's representations after exercising necessary and reasonable diligence regarding his employment and contractual relationship with the Atlanta Falcons.

301.

As a direct result of Dr. Boden's fraudulent acts and misrepresentations, Plaintiff has been damaged and continues to suffer additional damages, in an amount to be proven at trial.

302.

The fraudulent acts and conduct of Dr. Boden, Emory Healthcare and the Emory Clinic, as set forth in Count X, constitute willful misconduct and fraud and were done with an entire want of care, such as raising the presumption of conscious indifference to consequences. Accordingly, Plaintiff is entitled to recover punitive damages under O.C.G.A. § 51-12-5.1.

303.

Plaintiff alleges that the acts and conduct of Boden, Emory Healthcare, Emory Medical, and Emory Clinic were done with specific intent to cause harm, such that the punitive damages Plaintiff is entitled to recover are not subject to any statutory limit. Plaintiff is entitled to recover punitive damages in an amount to be determined by a jury at trial.

304.

The acts and conduct of Dr. Boden, Emory Healthcare, Emory Medical, and the Emory Clinic constitute intentional wrongdoing, and Plaintiff is therefore entitled to recover attorney's fees and expenses of litigation in an amount to be determined by a jury at trial.

**COUNT XI**
**BREACH OF CONTRACT**
*(Against Emory Healthcare, the Emory Clinic, and Emory Medical)*

305.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 151 into Count XI as if fully set forth herein.

306.

As a named Head Team Physician for the Atlanta Falcons, Plaintiff was a party to the 2019 and 2023 Multi-Year Agreements between Emory Healthcare, Emory Medical, Emory Clinic, the Atlanta Falcons, and Dr. Kyle Hammond, which governed the roles and responsibilities of Head Team Physician coverage for the Atlanta Falcons. These Agreements were valid and enforceable contracts.

307.

As he had done in years past, on or around or around May 1, 2019, Plaintiff entered the 2019 Agreement between Emory Healthcare, Emory Medical, Emory Clinic, the Atlanta Falcons, and Dr. Kyle Hammond.

308.

The first paragraph of the 2019 Agreement outlines the express intentions of the parties as follows:

> "This letter confirms a relationship between the Atlanta Falcons, Emory Healthcare, Inc., and The Emory Clinic, Inc.,

93

Dr. Brandon Mines and Dr. Kyle Hammond, for the personal services of Kyle Hammond, M.D., an employed physician of The Emory Clinic (or such other physician as Emory and the Team agree to substitute in accordance with Section 3 below) to perform certain services as the Atlanta Falcons Head Team Physician, and Brandon Mines, M.D., an employed physician of The Emory Clinic (or such other physician as Emory and the Team agree to substitute in accordance with Section 3 below) to perform certain services as the Atlanta Falcons Primary Care Sports Medicine Specialist services for the Atlanta Falcons, as set forth herein and in the attached Exhibits. (The physicians so acting from time to time, the "Team Physicians")."[26]

309.

On or around March 27, 2023, Plaintiff executed the 2023 Agreement after the expiration of the 2019 Agreement.

310.

Pursuant to the 2019 Agreement and the 2023 Agreement, the Atlanta Falcons contracted to compensate Emory Healthcare, Emory Medical, and Emory Clinic for team physician services and the time expended in performing those services.

311.

Plaintiff was an intended third-party beneficiary of the 2019 and 2023 Agreements between Emory Healthcare, Emory Medical, Emory Clinic, and the Atlanta Falcons.

---

[26] Exhibit D

312.

Plaintiff served as the Head Team Medical Physician for the Atlanta Falcons from 2014 until May 11, 2023.

313.

Over that time, Plaintiff attended the NFL Combine, completed player physicals, and performed other patient care services. Moreover, the Plaintiff missed valuable time seeing patients in clinic where he would have otherwise been earning money in his primary capacity as an orthopedic doctor.

314.

Plaintiff fully performed his obligations under the 2019 and 2023 Agreements by serving as the Head Team Medical Physician for the Atlanta Falcons from 2014 until May 11, 2023, including attending the NFL Combine, completing player physicals, and providing other medical services to Atlanta Falcons players.

315.

To date, Emory Healthcare, Emory Medical, and Emory Clinic have not compensated Plaintiff for medical services provided to the Atlanta Falcons players between early February 2023 and the time of his termination as Head Team Physician from the Atlanta Falcons on or around May 11, 2023.

316.

Emory Healthcare, Emory Medical, and Emory Clinic breached the 2019 Agreement and/or the 2023 Agreement by failing to compensate Plaintiff for medical services provided to Atlanta Falcons between early February 2023 and the time of his termination on or around May 11, 2023, as required under the terms of the Agreements.

317.

As a direct and proximate result of Emory Healthcare, Emory Medical, and Emory Clinic's failure to pay the monies owed under the 2019 and 2023 Agreements, Plaintiff suffered losses and damages, including lost compensation and other financial harm.

318.

Plaintiff is entitled to damages from Emory Healthcare, Emory Medical, and Emory Clinic in an amount to be determined at trial, including but not limited to, all unpaid compensation due under the 2019 and 2023 Agreements.

319.

Emory Healthcare, Emory Medical, and the Emory Clinic acted in bad faith, causing Plaintiff trouble and expense, and are liable for the harm caused by their breach.

**COUNT XII**
**BREACH OF CONTRACT**
*(Against the Atlanta Falcons)*

320.

Plaintiff re-alleges and incorporates the factual allegations in foregoing paragraphs 1- 151 into Count XII as if fully set forth herein.

321.

Plaintiff was a named party to the 2019 and 2023 Agreements between Emory Healthcare, Emory Clinic, the Atlanta Falcons, and Dr. Kyle Hammond, that governed the roles and responsibilities of Head Team Physician coverage for the Atlanta Falcons. Both the 2019 and 2023 agreements were valid and enforceable contracts.

322.

As he had done in years past, on or around or around May 1, 2019, Plaintiff entered the 2019 Agreement between Emory Healthcare, Emory Medical, Emory Clinic, the Atlanta Falcons, and Dr. Kyle Hammond.

323.

The first paragraph of the 2019 Agreement outlines the express intentions of the parties as follows:

> "This letter confirms a relationship between the Atlanta Falcons, Emory Healthcare, Inc., and The Emory Clinic, Inc.,

97

***Dr. Brandon Mines*** and Dr. Kyle Hammond, for the personal services of Kyle Hammond, M.D., an employed physician of The Emory Clinic (or such other physician as Emory and the Team agree to substitute in accordance with Section 3 below) to perform certain services as the Atlanta Falcons Head Team Physician, and ***Brandon Mines, M.D***., an employed physician of The Emory Clinic (or such other physician as Emory and the Team agree to substitute in accordance with Section 3 below) ***to perform certain services as the Atlanta Falcons Primary Care Sports Medicine Specialist*** services for the Atlanta Falcons, as set forth herein and in the attached Exhibits. (The physicians so acting from time to time, the "***Team Physicians***")."[27] (*emphasis added*)

324.

As he had done in years past, on or around March 27, 2023, Plaintiff executed the 2023 Agreement between the Atlanta Falcons, Emory Healthcare, the Emory Clinic, Dr. Kyle Hammond, and Dr. Destin Hill.

325.

Pursuant to the 2019 Agreement and the 2023 Agreements, the Atlanta Falcons contracted to compensate Emory Healthcare, Emory Medical, and Emory Clinic for team physician services and the time expended in performing those services.

---

[27] *Id.*

326.

Plaintiff was an intended third-party beneficiary of the 2019 and 2023 Agreements between Emory Healthcare, Emory Medical, Emory Clinic, and the Atlanta Falcons.

327.

Plaintiff served as the Head Team Medical Physician for the Atlanta Falcons from 2014 until May 11, 2023.

328.

Over that time, Plaintiff attended the NFL Combine, completed player physicals, and performed other patient care services. Moreover, the Plaintiff missed valuable time seeing patients in clinic where he would have otherwise been earning money in his primary capacity as an orthopedic doctor.

329.

Plaintiff fully performed his obligations under the 2019 and 2023 Agreements by serving as the Head Team Medical Physician for the Atlanta Falcons from 2014 until May 11, 2023, including attending the NFL Combine, completing player physicals, and providing other medical services to Atlanta Falcons players.

330.

To date, the Atlanta Falcons have not compensated Plaintiff for medical services provided to the Atlanta Falcons players between early February 2023 and the time of his termination as Head Team Physician from the Atlanta Falcons on or around May 11, 2023.

331.

The Atlanta Falcons breached the 2019 and 2023 Agreements by failing to pay Plaintiff for medical services provided to Atlanta Falcons players between early February 2023 and the time of his termination on or around May 11, 2023, as required under the terms of the Agreements.

332.

As a direct and proximate result of the Atlanta Falcons' failure to pay the monies owed under the 2019 and 2023 Agreements, Plaintiff suffered losses and damages, including lost compensation and other financial harm.

333.

Plaintiff is entitled to monetary damages from the Atlanta Falcons in an amount to be determined at trial, including but not limited to, all unpaid compensation due under the 2019 and 2023 Agreements.

334.

The Atlanta Falcons acted in bad faith, causing Plaintiff trouble and expense, and are liable for the harm caused by their breach of contract.

**COUNT XIII**
**UNJUST ENRICHMENT AND QUANTUM MERUIT**
*in the alternative to Count XII*
*(Against the Atlanta Falcons)*

335.

Plaintiff re-alleges and incorporates the factual allegations in foregoing paragraphs 1- 151 into Count XIII as if fully set forth herein.

336.

On or around February 2023 through May 11, 2023, Plaintiff conferred a benefit of valuable medical services upon the Atlanta Falcons, including attending the NFL Combine, completing player physicals, and performing other medical services for the team.

337.

Plaintiff began his role with the Falcons in 2011 and was promoted and elevated to Head Team Medical Physician in 2014. He remained in that position without incident or any record of performance issues until he was terminated in May 2023.

101

338.

On or around February 2023 through May 11, 2023, the Atlanta Falcons requested the benefit of medical services and knowingly accepted the benefit.

339.

The Atlanta Falcons knew the benefit conferred upon them by Plaintiff.

340.

The Atlanta Falcons accepted and retained the benefit that Plaintiff conferred on the Falcons.

341.

It is unjust to permit the Atlanta Falcons to retain the benefit of professional medical services without compensating Plaintiff for the benefit.

342.

The Atlanta Falcons' acts and omissions leading to their unjust enrichment were the actual and proximate cause of harm to Plaintiff.

343.

Accordingly, Plaintiff demands judgment against the Atlanta Falcons in an amount to be determined at trial, plus costs, interest, reasonable attorneys' fees, and all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all questions of fact and damages raised by this Second Amended Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

    (a)    trial by a twelve (12) person jury;

    (b)    actual damages on all Counts in an amount to be proven at trial;

    (c)    consequential damages on all Counts in an amount to be determined at trial;

    (d)    general damages on all Counts in an amount to be determined at trial;

    (e)    statutory damages for each statutory violation (Title VII and Section 1981) as described herein in an amount to be determined at trial;

    (f)    special damages in an amount to be proven at trial;

    (g)    exemplary and punitive damages in an amount to be determined at trial;

    (h)    reasonable attorney's fees, costs, and expenses to the fullest extent permitted by law;

(i)   interest as allowed by law and

(j)   for any other such further relief as this Court or trier of fact deems just and proper.

Respectfully submitted this 29th day of October 2024.

**THE WHITE LEGAL GROUP LLC**

*/s/ Frederica Joy White*
Frederica Joy White
GA Bar No. 753400
*/s/ Alexandria Huiskens*
Alexandria Huiskens, *pro hac vice*
1450 W Peachtree Street NW
#200 PMB 56702
Atlanta, Georgia 30309
(404) 394-8344
jwhite@thewhitelegalgroup.com
ahuiskens@thewhitelegalgroup.com

***Attorneys for Plaintiff Brandon Mines***

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing complies

with the font and point selection approved by this Court in Local Rule 5.1(B).

*/s/ Frederica Joy White*
Frederica Joy White
Georgia Bar No. 753400

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 29, 2024, I electronically filed the foregoing

**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES** with the

Clerk of Court using the CM/ECF system, which will send notification of such filing

and effectuate service to all counsel of record in this matter.

*/s/ Frederica Joy White*
Frederica Joy White
Georgia Bar No. 753400
