**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DR. BRANDON A. MINES,    )
                                          )
    Plaintiff,                     )
                                          )
v.                                        )
                                          )         CIVIL ACTION NO.:
EMORY HEALTHCARE, INC., THE    )         1:24-cv-02408-ELR-CMS
EMORY CLINIC, INC., EMORY       )
UNIVERSITY SCHOOL OF            )
MEDICINE, THE ATLANTA           )
FALCONS FOOTBALL CLUB, LLC,     )
DR. SCOTT BODEN, and DR.        )
KENNETH MAUTNER, in their       )
individual and professional capacities,  )
                                          )
    Defendants.                   )

## THE ATLANTA FALCONS FOOTBALL CLUB, LLC'S RESPONSE TO PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

Ronald B. Gaither
Georgia Bar No. 282292
rgaither@bakerlaw.com
Eric L. Barnum
Georgia Bar No. 039305
ebarnum@bakerlaw.com
Olivia S. Williams
Georgia Bar No. 804380
owilliams@bakerlaw.com
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734

*Attorneys for Defendant, The Atlanta Falcons Football Club, LLC*

Pursuant to Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(B), Defendant, The Atlanta Falcons Football Club, LLC ("Defendant"), hereby files its Response to Plaintiff's Objection to the Magistrate Judge's Non-Final Report and Recommendation ("R&R"). [Doc. 87.]

## I.    RELEVANT PROCEDURAL BACKGROUND

Plaintiff's Second Amended Complaint ("SAC") alleges the following claims against Defendant: Race discrimination under 42 U.S.C. Section 1981 ("Section 1981) (Count Two); Race retaliation under Section 1981 (Count Five); Defamation (Count Nine); Breach of Contract (Count Twelve); and Unjust Enrichment and Quantum Meruit (Count Thirteen). [Doc. 52.] Defendant's Partial Motion to Dismiss Plaintiff's SAC moved to dismiss all claims asserted against Defendant, pursuant to Fed. R. Civ. P. 12(b)(6), except for Plaintiff's defamation cause of action which was not addressed. [Doc. 56.]

On June 20, 2025, the Magistrate Judge issued an R&R that includes two separate recommendations. First, the R&R recommends that Defendant's Partial Motion to Dismiss should be granted, and that the federal law claims contained in Counts One through Five of the SAC be dismissed with prejudice.[1] As part of this

---

[1] Although the Magistrate Judge specifically recommends that "Counts One through Five of the [SAC] be dismissed with prejudice" only Counts Two (race discrimination under Section 1981) and Five (race retaliation under Section 1981) were asserted against Defendant. [Doc. 72 at 129.] Counts One (race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), Three (racially hostile

recommendation, the R&R also states that the Court should decline to exercise supplemental jurisdiction over the state law claims contained in Counts Six through Thirteen and that those claims should be dismissed without prejudice. Second, and in the alternative, the R&R recommends that the Court grant Defendant's Partial Motion to Dismiss (as well as Emory Defendants' Motion to Dismiss) and dismiss Counts One, Two, Three, Four, Five, Six, Seven, Eight, Ten, Eleven, Twelve, and Thirteen of the SAC with prejudice.[2] [Doc. 72 at 129-30.] The R&R further states that "if the district judge adopts this recommendation, only the defamation claim in Count Nine should remain pending."[3] [*Id*. at 130.] On July 28, 2025, Plaintiff filed

---

work environment under Title VII), and Four (retaliation under Title VII) were asserted against Defendants Emory Healthcare, Inc., the Emory Clinic, Inc., Emory University School of Medicine, Dr. Scott Boden, and/or Dr. Kenneth Mautner (collectively referred to as "Emory Defendants"). Emory Defendants also filed a Motion to Dismiss Plaintiff's SAC, pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of all claims, except for Plaintiff's defamation claim. [*See* Doc. 57.] Therefore, the R&R also addresses causes of action asserted against Emory Defendants.

[2] Only Counts Two, Five, Twelve, and Thirteen of the SAC were asserted against Defendant. The other remaining Counts were asserted against Emory Defendants and/or Defendants Boden and Mautner.

[3] Although the R&R's alternative recommendation does not expressly state that the Court should retain supplemental jurisdiction over Plaintiff's state law claims for defamation (Count Nine), breach of contract (Count Twelve), and unjust enrichment and quantum meruit (Count Thirteen), it is evident that the R&R's alternative recommendation requires the Court to exercise supplemental jurisdiction because: (1) the Court could not substantively rule on Count Nine, Twelve and Thirteen without not retaining supplemental jurisdiction; and (2) the R&R does expressly state that just Plaintiff's "defamation claim in Count Nine should remain pending." [Doc. 72 at 130.]

2

"Plaintiff's Objection to the Magistrate Judge's Non-Final R&R" which includes five objections that are specifically applicable to the R&R's recommendation regarding the claims asserted against Defendant in the SAC. [Doc. 87.][4]

## II.   <u>RELEVANT LEGAL STANDARDS</u>

"[A]ny party may serve and file written objections to [the magistrate judge's] proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1). However, a party that files objections to a Magistrate Judge's report and recommendation must "identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Kohser v. Protective Life Corp.*, 649 F. App'x 774, 777 (11th Cir. 2016) (*quoting Heath v. Jones*, 863 F.2d 815, 822 (11th Cir.1989)). In reviewing a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Saldana v. United States*, 406 F. App'x 413, 416 (11th Cir. 2010) ("A district court judge must review *de novo* the parts of the report and recommendation to which a

---

[4] Plaintiff's Objection is forty-three (43) pages in length (not including the cover page, signature block, etc.) which exceeds the forty (40) pages granted by the Court. [*See* Doc. 80.] S*ee IOU Cent., Inc v. Trujdllo*, No. 1:20-CV-01214-ELR, 2020 BL 524075, at \*2 (N.D. Ga. Aug. 11, 2020) ("The Court does not condone . . . noncompliance with the Local Rules; these practices are inefficient and place unnecessary strain on judicial resources.")

party objects."). Ultimately, "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "[t]he judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636 (b)(1).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atlantic Corporation et al., v. William Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when the plaintiff pleads factual content necessary to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (quoting *Twombly*, 550 U.S. at 570). Furthermore, the court is "not bound to accept as true a legal conclusion couched as a factual assertion." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Indeed, a complaint must contain "more than an unadorned, the defendant unlawfully-harmed-me accusation," and a "pleading that offers labels and

4

conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

"A 'dismissal for failure to state a claim under [Rule 12(b)(6)] is a 'judgment on the merits'" and is, "in turn, presumed to operate as a dismissal with prejudice unless the district court specifies otherwise. *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.,* 673 F. App'x 925, 929 (11th Cir. 2016) (quoting *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990)). Therefore, "under the federal procedural rules, the district court need not provide specific justification for dismissing with prejudice, as this is the default effect of a proper Rule 12(b)(6) dismissal." *Id.* Notably, the Eleventh Circuit has opined that a court's discretion to dismiss a complaint without leave to amend is restricted by Fed. R. Civ. P. 15(a)(2), which provides that leave to amend, when requested by the plaintiff, "be freely given when justice so requires." *Id.* The Eleventh Circuit has also espoused the view that a court should grant a plaintiff at least one chance to amend its complaint before dismissing the action with prejudice when a more carefully drafted complaint might state a claim for relief. *Id.* However, the Eleventh Circuit has been clear that it has "**never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor [has it] concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a**

5

**deficient pleading after having been offered ample opportunity to do so.**" *Id.* at 930 (emphasis added).

## III.   ARGUMENT AND CITATION TO AUTHORITY

### A.   The R&R Properly Recommends the Dismissal of Plaintiff's Section 1981 Race Discrimination Claim.

Plaintiff argues that the R&R erroneously recommends dismissal of Plaintiff's Section 1981 race discrimination claim because the R&R: (1) applies an elevated and legally incorrect pleading standard; (2) disregards well-pled allegations establishing treatment, discriminatory intent, and adverse action; and (3) misstates the legal standard under section 1981 and mischaracterizes the allegations set forth in the SAC. [Doc. 87 at 3-10.] Plaintiff's Objection is not supported by the R&R, the facts alleged in the SAC, nor applicable case law.

### i.   The R&R applies the proper pleading standard and thoroughly assesses Plaintiff's allegations prior to recommending dismissal of Plaintiff's Section 1981 race discrimination claim.

Plaintiff argues that the R&R improperly recommends dismissal of Defendant's Section 1981 discrimination claim because "[r]ather than applying the plausibility standard required at the pleading stage, the R&R effectively demands that Plaintiff prove his claim before discovery by requiring documentary evidence, definitive comparator matching, and a fully substantiated joint employer relationship." [*Id*. at 3.] The R&R expressly states that "at the pleading stage, a

6

plaintiff must 'provide enough factual matter to plausibly suggest intentional discrimination,' which requires pleading 'sufficient facts to plausibly suggest discrimination under the but-for causation standard.'" [Doc. 72 at 56 (quoting *Scott v. Harris*, No. 2:20-cv-596-ECM, 2022 WL 2161493, at *4 (M.D. Ala. June 15, 2022).] Therefore, contrary to Plaintiff's Objection, the R&R does not apply, nor does it suggest the application of, the higher pleading standard used to assess motions for summary judgment. [*See* Doc. 87 at 3.]

The R&R thoroughly assessed (over the course of ten (10) pages) the facts Plaintiff alleged in support of his Section 1981 discrimination claim.[5] [*See* Doc. 72 at 53-64.]  In order "[t]o state a claim of race discrimination under § 1981, a plaintiff must allege facts establishing: (1) that he is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1351–52 (N.D. Ga. 2017) (quoting *Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171–72 (11th Cir. 2016)).

Moreover, "Section 1981 requires a showing of 'purposeful discrimination,' and 'provides protection only on the basis of race.'" *Henley*, 267 F. Supp. 3d at 1352

---

[5] Plaintiff's Objection argues that the R&R's failure to credit his factual allegation reflects "clear legal error and a substitution of judicial factfinding for the Rule 12 standard" [*Id.* at 4].

(internal citations omitted). Therefore, "[a] § 1981 plaintiff 'must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.'" *Id.* (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, —— U.S. ——, 140 S. Ct. 1009, 1019, 206 L.Ed.2d 356 (2020) (interpreting § 1981)). A plaintiff need not allege facts sufficient to make out a classic *McDonnell Douglas prima facie case*; however, a plaintiff must provide enough factual matter (taken as true) to suggest intentional race discrimination. *See Rodriguez v. Procter & Gamble Co.*, 338 F. Supp. 3d 1283, 1286 (S.D. Fla. 2018).

After assessing the facts alleged, the R&R correctly opined that the Court should dismiss Plaintiff's Section 1981 discrimination claim because the SAC failed to allege plausible and non-conclusory statements that support Plaintiff was intentionally discriminated against. Specifically, the R&R provided that:

- "Mines appears to seek to hold the Falcons responsible for claims relating to Mines's employment with Emory" [*Id.* at 56.];
- Plaintiff has not "pled facts suggesting that the Falcons acted jointly with the Emory Defendants to affect the conditions and terms of Mines's employment with Emory" [*Id.* at 57.];
- "[T]he language of the 2023 Agreement . . . did not reflect that Mines was demoted" and "even if there was a demotion, Mines has not pled facts showing that the Falcons' decisions to add Hill to the contract was based on race"[6] [I*d.* at 58.];

---

[6] Plaintiff argues that his "SAC plainly alleges a demotion." [Doc. 87 at 5.] In support, Plaintiff provides that he "previously served as the exclusive Head Team Medical Physician, a position conferred singular authority, prestige, and control over player care" and Defendant "unilaterally altered that status by revising the 2023 Agreement to insert Dr. Destin Hill . . . as Plaintiff's co-equal." [Doc. 87 at 5.] Plaintiff's position completely ignores the fact that Dr. Hill's addition to the 2023

8

- The allegations to support Plaintiff's claim that "the Falcons discriminated against him based on his race by terminating his position as Head Medical Physician" were conclusory [*Id.* at 61.];
- Plaintiff alleged various facts based on "information and belief," which the Court does not have to accept as true when the allegations are conclusory and there are no corresponding facts to support them [*Id.* at 62.];
- Plaintiff pled no facts that would allow the Court to infer discriminatory intent based on the Falcons' treatment of other providers, because Plaintiff "pleads no facts that show that the situation with Karas situation [sic] was like his"[7] [*Id.* at 63.]; and
- Plaintiff "pleads no facts that would allow the Court to infer that a continuing pattern of race discrimination existed," and "[e]ven if [he] had pled facts, he could not have supported a claim against the Falcons based on pattern and practice theory, because such a claim cannot be based on single incident or isolated incidents." [*Id.* at 64.]

The R&R did not find the allegations in the SAC sufficient to sustain a Section 1981 discrimination claim. Plaintiff has now chosen chose to ignore the R&R's bona fide plausibility assessment and erroneously argue that "the R&R fail[ed] to engage

---

Agreement did not change his role or "strip[] him of his leadership role." [Doc. 1-6 at 1; Doc. 87 at 5.] Dr. Boden expressly informed Plaintiff that "his team title has always been Head Team Medical and [that] it [would] not change for the 2023 Season." [Doc. 1-8 at 1; Doc. 72 at 58.] Furthermore, Plaintiff cites *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1204 (11th Cir. 2013) to support his assertion that "the stripping of status, authority, and responsibility constitutes a materially adverse employment action." [Doc. 87 at 5]. However, the Eleventh Circuit in *Kidd* opined that: (1) "the touchstone is whether adverse employment action alleged was "materially adverse as viewed by a reasonable person in the circumstances"; and (2) "[the plaintiff's] demotion claim—grounded on a loss of supervisory responsibility of the accounts payable department, not a loss of salary or benefits—does not rise to that level." *Kidd,* 731 F.3d at 1204.

[7] Plaintiff argues that the R&R is silent regarding Plaintiff's allegations of the "stark differential treatment[] between a Black physician abruptly ousted without process and white colleagues who were retained or allowed to resign." [Doc. 87 at 6.] This argument blatantly ignores the R&R's assessment of Plaintiff's allegations related to Dr. Karas. [*See* Doc. 72 at 62.]

with [the] evidence" and improperly deemed the relevant allegations conclusory. [Doc. 87 at 7.]

> ii.    **The R&R provides and applies the proper legal standard under Section 1981 and properly assesses the relevant allegations in the SAC.**

Lastly, in support of Plaintiff's Objection to the R&R's recommendation to dismiss his Section 1981 discrimination claim, Plaintiff argues that the R&R erred because it misstates the legal standard under Section 1981 and mischaracterizes the allegations in the SAC. [Doc. 87 at 7-10.] More specifically, Plaintiff's Objection states that "[t]he R&R improperly dismisses Plaintiff's § 1981 race discrimination claim against the Falcons by importing a joint employer standard that has no place in the analysis." [*Id.* at 7.] Plaintiff's Objection is based on a misunderstanding of the R&R's analysis of the alleged intentional acts of discrimination pled in support of Plaintiff's Section 1981 discrimination claim.

As discussed in the R&R [Doc. 72 at 56-58], and Defendant's Motion to Dismiss [Doc. 56 at 8-12 & n.8], the SAC improperly relies on allegations of intentional discrimination committed by other defendants to support a Section 1981 discrimination claim against Defendant. Under Count II, the SAC begins by making a general and conclusory statement that "[t]he Atlanta Falcons, Emory Healthcare, Emory Medical, Emory Clinic, Boden, and Mautner intentionally discriminated against Plaintiff on the basis of his race." [Doc. 52 ¶ 172.] Immediately following

10

this general and conclusory statement, the SAC sets forth a series of claims describing the intentional acts of discrimination that he was allegedly subjected to including: "fostering a retaliatory, hostile work environment leading to Plaintiff's constructive discharge from his employment with the Emory Defendants [*Id.* ¶ 176]," "subjecting him to unequal compensation relative to his white peers [*Id.* ¶ 177]," and "subjecting him to disparate terms and conditions of employment, including but not limited to lack of opportunity and harm to his professional reputation relative to his white peers [*Id.* ¶ 176]."[8]

These allegations are directly connected to Plaintiff's employment *with* Emory, not Defendant, and they cannot be used to support a Section 1981 claim against Defendant. *See Llampallas v. Mini-Cirs., Lab, Inc.*, 163 F.3d 1236, 1245 (11th Cir. 1998) (dismissing defendant from the suit because defendant "had absolutely nothing to do with [the adverse employment] decision," and was "completely uninvolved in the operation of [the other defendant's business.]").

---

[8] Plaintiff's Objection attempts to rework Plaintiff's insufficient Section 1981 discrimination claim by pulling insufficient allegations throughout the 106-page mammoth Complaint in order to try to connect Defendant to some intentional act of discrimination since the facts, as alleged, did not implicate Defendant. [*See* Doc. 87 at 8.] Plaintiff's attempt to rework his Section 1981 discrimination claim is improper. Further, as the R&R correctly finds, Plaintiff's conclusory allegations that "the Falcons acted in 'concert' with or 'conspired with' the Emory Defendants" and "that the Falcons 'aided and abetted [the Emory Defendants and Boden] to racially discriminate against' him," are not supported by the facts pled and thus fail to state a plausible claim for discrimination under Section 1981 against Defendant.[Doc. 72 at 57 (quoting Doc. 52 ¶¶ 141, 181).]

Notably, Defendant's Motion to Dismiss and the R&R only raise the absence of joint employer facts from Plaintiff's SAC because the intentional acts of discrimination alleged in support of Count II can only be attributed to Plaintiff's employment at Emory. Therefore, contrary to Plaintiff's Objection, the R&R does not erroneously "import[] a joint employer standard." [Doc. 87 at 7.]  For the reasons discussed above, the Court should reject Plaintiff's Objection and adopt the R&R's recommendation to dismiss Plaintiff's Section 1981 race discrimination claim with prejudice.

B.    **The R&R Properly Recommends Dismissal of Plaintiff's Section 1981 Retaliation Claim.**

To establish a retaliation claim under Section 1981, a plaintiff must prove that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was some causal relation between the two events. *Hayes v. ATL Hawks, LLC,* 844 F. App'x 171, 183 (11th Cir. 2021). In order for alleged statutorily protected activity to be capable of supporting a claim for retaliation in violation of Section 1981, **the plaintiff's complaint must reasonably convey that they are opposing discrimination based on race, as opposed to some other type of discrimination or general injustice.** *See Henley*, 267 F. Supp. 3d at 1354 (emphasis added).

### i.   The R&R applies the proper legal standard for protected activity under Section 1981.

Plaintiff's Objection alleges that "[t]he R&R's conclusion that Plaintiff failed to allege protected activity under § 1981 is not only legally erroneous, but it also disregards multiple, well-supported bases for finding that Plaintiff engaged in protected opposition to racial discrimination." [Doc. 87 at 10.] Plaintiff then specifically argues that he engaged in protected activity, under Section 1981, when he: (1) "opposed his demotion in favor of Destin Hill . . . and raised explicit concerns that the decision reflected racial bias"; (2) "challenged his exclusion from player care responsibilities and alleged that Black team physicians, including himself, were treated less favorably than white colleagues"; and (3) "raised specific concerns about the legality of the 2023 Agreement under the NFL's 2020 Collective Bargaining Agreement ("CBA") and objected to being forced to share his leadership with Dr. Hill." [*Id.* at 10-11.] The R&R accurately recommended the dismissal of Plaintiff's Section 1981 claim because these allegations are not accurate and are insufficient to support that Plaintiff engaged in a statutorily protected activity with regard to the Falcons.

First, Plaintiff's Objection attempts to avoid the R&R's recommendation of dismissal by mischaracterizing and/or inaccurately summarizing the allegations in the SAC. For example, Plaintiff argues that he engaged in protected activity when he "opposed his demotion in favor of Destin Hill . . . and raised explicit concerns

13

that the decision reflected racial bias." [Doc. 72 at 10 (referencing Doc. 52 ¶¶ 62, 78, 218-220, 222]. However, a review of the allegations in the paragraphs cited, as well as the applicable exhibits, reflects that Plaintiff did not explicitly raise concerns regarding racial bias. Rather, as discussed in Defendant's Motion to Dismiss and the R&R, the communications between Plaintiff and Dr. Boden reflect that Plaintiff did not express opposition to intentional race discrimination when complaining about the 2023 Agreement. Rather, Plaintiff's opposition to the inclusion of Dr. Hill was related to Plaintiff's desire to have his role and title distinguished from Dr. Hill's. [*See* Doc. 52 ¶ 62; Ex. F at Doc. 1-7; Ex. G at Doc. 1-8; Doc. 72 at 68-69 (stating that "[t]he exhibits are controlling"); Doc. 72 at 69 ( holding that "those complaints do not constitute protected activity under Section 1981."]; *see also Canty v. Fry's Elecs., Inc.*, No. 1:09-CV-3508-WSD, 2012 WL 1038611, at *5 (N.D. Ga. Mar. 27, 2012) (finding plaintiff's internal complaint did not constitute protected activity because his internal complaint only complained of unfair treatment and did not assert an allegation of discrimination based on a protected class); *Cochran v. S. Co.*, No. CIV.A. 14-0569-WS-N, 2015 WL 3508018, at *2 (S.D. Ala. June 3, 2015) (holding that "[n]othing in the [c]omplaint . . . would support a reasonable inference that [plaintiff's] internal complaints or her EEOC Charge were grounded in allegations of race discrimination; therefore, her pleading does not state a plausible claim for § 1981 retaliation, and falls short under a *Twombly/Iqbal* analysis).

14

Next, Plaintiff argues that he engaged in protected activity when he "challenged his exclusion from player responsibilities and alleged that Black team physicians, including himself, were treated less favorably than white colleagues." [Doc. 87 at 10.] In support of this argument, Plaintiff references paragraphs 64-66 of the SAC. [*See* Doc. 52.] A review of the allegations in these paragraphs also reveals an absence of any race based concerns or complaint being raised by Plaintiff to Defendant.[9] Finally, Plaintiff's complaint(s) regarding "the legality of the 2023 Agreement under the NFL's 2020 [CBA], and [his] object[ion] to being forced to share his leadership with Dr. Hill," do not qualify as protected conduct because the complaint(s) is not related to an unlawful employment practice or race discrimination. [Doc. 87 at 11; Doc. 72 at 68.]; *see Turner v. McKesson Corp.*, No. 2:12-cv-2053, 2013 WL 4727651, at *8 (N.D. Ala. Sept. 3, 2013) ("[T]o be considered protected activity under § 1981, any complaints must include some sort of reference to race discrimination or harassment."); *See Cochran*, 2015 WL at *2

---

[9] Plaintiff cites *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) to support his argument that his opposition to his alleged demotion in favor of Dr. Hill, his challenge to his exclusion from player care responsibilities, and his allegations that Black team physicians were treated less favorably are sufficient protective activity under Section 1981. However, this case is not applicable to Plaintiff's argument because the Eleventh Circuit in *Edwards* assessed a hostile work environment claim under Section 1981. Furthermore, the Court held that the plaintiff did not state a claim for relief under Section 1981.

15

((granting defendant's motion to dismiss plaintiff's retaliation claim where the alleged conduct was unrelated to race).

> **ii.    The R&R properly finds no casual connection between Plaintiff's alleged complaints of race discrimination and the alleged adverse employment action.**

"A plaintiff establishes a causal connection between the alleged protected activity and the alleged adverse employment action when the plaintiff demonstrates that the protected activity and the adverse action were not wholly unrelated. *See Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir. 1999). The Eleventh Circuit has "plainly held that a plaintiff satisfies this element if he provides sufficient evidence *that the decision-maker became aware of the protected conduct,* and that there was close temporal proximity between this awareness and the adverse employment action." *Id*. (emphasis added).

Plaintiff's Objection argues that "[t]he SAC draws a direct line between Plaintiff's complaints of race discrimination and the adverse employment actions taken against him by the Falcons, specifically, his demotion and termination." [Doc. 78 at 12.] Plaintiff cites paragraphs 62, 78, 218-220 of the SAC to support this argument. [*See* Doc. 52.] However, the allegations in these paragraphs do not support a causal connection between Plaintiff's alleged complaints of discrimination and Plaintiff's alleged demotion and employment termination by Defendant. For example, paragraph 62 of the SAC alleges that "[Defendant] and the Emory

16

Defendant's terminated Plaintiff's contract in retaliation because he questioned the 2023 Agreement's compliance with the NFL's 2020 CBA and because Plaintiff dared to question Boden, Emory, and [Defendant] about unfairly demoting him by requiring him to share his hard-earned role with Destin Hill, a less experienced white man." Paragraph 62 is insufficient to establish the requisite casual connection because: (1) as discussed above, Plaintiff's questioning of the 2023 Agreement's compliance with the NFL's 2020 CBA does not qualify as a protected activity under Section 1981; (2) the communications attached to the SAC reflect that Plaintiff's complaints to Dr. Boden, regarding the addition of Dr. Hill to the 2023 Agreement, did not raise race discrimination, as required; and (3) even if Plaintiff did expressly raise race as a concern in his complaints to Dr. Boden regarding the addition of Dr. Hill (which he did not), the SAC pleads no facts that support Defendant was aware of these communications. [*See* Doc. 72 at 68-69.]

Plaintiff's Objection also suggests that the R&R "ignores . . . Plaintiff's internal complaints directly to Falcons leadership about being replaced by a white physician and subject to disparate treatment" and instead "erroneously zeroes in on Plaintiff's later DEI and EEOC complaints and concludes that those postdated the Falcons' actions." [Doc. 87 at 12-13.] However, Plaintiff's opposition ignores the R&R's <u>thorough and accurate</u> assessment of his allegation that he made "internal complaints directly to Falcons leadership." [*Id.*; Doc. 72 at 68-69.] The R&R only

17

moved on to an assessment of the complaints Plaintiff made to Emory's DEI department and his EEOC Charge, both which occurred after Defendant terminated Plaintiff's employment, because the other alleged protected activities were insufficient to support a Section 1981 retaliation claim. [Doc. 72 at 70.]

Ultimately, for the reasons set forth above, the Court should adopt the R&R's recommendation to dismiss Plaintiff's Section 1981 retaliation claim, with prejudice.

**C.    The R&R Erred by Recommending That the Court Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims and Dismiss Plaintiff's State Law Claims Without Prejudice.**

Plaintiff objects to the "R&R's recommendation that the Court decline supplemental jurisdiction over Plaintiff's state law claims against [Defendant], The Emory Defendants, Boden, and Mautner." [Doc. 87 at 13.] To the extent (and only to the extent) that Plaintiff's Objection argues that the R&R erred when it recommended that the district judge exercise discretion under 28 U.S.C.§ 1367(c) and decline to retain supplemental jurisdiction over Plaintiff's state law claims, Defendant agrees. As discussed in Defendant's Objection to the R&R [Doc. 86 at 5-16], the R&R omitted a crucial step when it declined to retain supplemental jurisdiction over Plaintiff's state law claims without consideration of the following factors set forth in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966): judicial economy, convenience, fairness, and comity.

Thus, if the R&R thoroughly analyzed the *Gibbs* factors, the R&R would *not* have recommended that the Court decline to exercise supplemental jurisdiction and dismiss Plaintiff's state law claims without prejudice. Consequently, Defendant agrees with Plaintiff that the Court should reject the R&R's recommendation to decline exercising supplemental jurisdiction. The Court should dismiss Plaintiff's state law claims without prejudice.

**D.    The R&R Correctly Recommended Dismissal of Plaintiff's Breach of Contract Claim.**

The essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Kabir v. Statebridge Co., LLC*, 2011 WL 4500050, at *7 (N.D.Ga. Sept. 27, 2011). When alleging these elements, a plaintiff must allege a particular contractual provision that has been breached by the defendant in order to survive a motion to dismiss. *Id*. Plaintiff's SAC asserts a breach of contract claim against Defendant based on Defendant's alleged failure to pay him for services he provided to Defendant from February 10, 2023, to May 22, 2023. [Doc. 72 at 71-72; Doc. 52 ¶¶ 320-34.] However, the R&R recommends dismissal of Plaintiff's breach of contract claim because "the 2019 and 2023 Agreements did not require the Falcons to compensate Mines," and therefore, Plaintiff failed to state a plausible breach of contract claim against Defendant for failure to compensate. [Doc. 72 at 74-75.]

19

### i.    The R&R accurately assesses the facts alleged in the SAC in support of Plaintiff's breach of contract claim.

Plaintiff's Objection argues that the "SAC alleges that Plaintiff was named a Team Physician under enforceable agreements, and the Falcons failed to ensure he was paid for services rendered to their players, and that he suffered financial harm as a result." [Doc. 82 at 16.] Plaintiff then takes his opposition to the R&R one step further and argues that "[r]ather than credit [Plaintiff's] well-pleaded allegations [in ¶¶ 320-334 of the SAC], the R&R improperly weighs evidence and draws inference in the Falcons' favor" "by relying on language suggesting Emory was solely responsible for payment." [Doc. 86 at 16.] Plaintiff's Objection reflects a misunderstanding of Georgia law related to alleging a breach of a contract claim when there is an express contract.

Contrary to Plaintiff's suggestion, the present matter does not involve a dispute over the interpretation of an ambiguous contract with multiple parties. [*See* Doc. 87 at 16 ("It is blackletter law that contract interpretation disputes involving ambiguous or multi-party agreements, cannot be resolved on a Rule 12 motion.")] Rather, the 2019 Agreement and the 2023 Agreement contain identical provisions about compensation. [Doc. 72 at 72-73.] Plaintiff's Objection essentially asks the Court to reject the R&R's assessment of the compensation provisions that clearly make Emory responsible for payment of Plaintiff's compensation. [*Id*. at 73.] To do so would be clear error.

20

Moreover, the R&R does not base its findings on contractual "language *suggesting* Emory was solely responsible for payment." [Doc. 87 at 16 (emphasis added).] The R&R relies on the clear language of the Agreement that makes Emory contractually responsible for payment of Plaintiff's compensation. *See Burgin v. Fed. Home Loan Mortg. Corp. As Tr.*, No. 113CV01391TWTGGB, 2013 WL 12067481, at *5 (N.D. Ga. July 19, 2013), report and recommendation adopted *sub nom. Burgin v. Fed. Home Loan Mortg. Corp.*, No. 1:13-CV-1391-TWT, 2013 WL 12070095 (N.D. Ga. Aug. 2, 2013) ("Not only are Plaintiff's allegations contrary to Georgia law; they are directly contradicted by the express terms of the [contracts], both of which are relied on in the complaint[.]"); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) (opining that the "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

Moreover, under both Agreements, Plaintiff agreed to release and hold Defendant harmless for any failures or refusals by the Emory Clinic to properly compensate. [Ex. D at Doc. 1-5 at 8; Ex. E at Doc. 1-6 at 8.] Plaintiff cannot ignore this provision of the Agreements which bars him from bringing a breach of contract claim against the Falcons based on the Falcons' alleged failure to compensate him. [*Id*.] *See Griffin Indus., Inc.*, 496 F.3d at 1205–06 (finding that the contract expressly

21

disclaimed any duty of defendant to act in the matter plaintiff alleges was required under the contract).

### ii.    Plaintiff's third-party beneficiary theory is misled.

Plaintiff argues that "[t]he R&R errs by ignoring Plaintiff's well-supported theory that he was an intended third-party of the Falcons-Emory agreements." [Doc. 87 at 16.] However, the R&R does not "ignore" Plaintiff's allegations related to him being a third party beneficiary.[10] Rather, the R&R correctly omits an analysis of Plaintiff's allegations related to a third-party beneficiary theory because the 2019 and 2023 Agreements expressly stated that Plaintiff "shall release and hold the Falcons harmless from and against any failure or refusal by the Emory Clinic to pay or reimburse them for any compensation that may be due and owing to them for services provided pursuant to this Agreement." [Ex. D at Doc. 1-5 at 8; Ex. E at Doc. 1-6 at 8.] Therefore, even if Plaintiff alleged facts sufficient to sustain a breach of contract claim based on a third-party beneficiary theory (which he did not and cannot), the express terms of the agreement bar Plaintiff from seeking recovery of compensation from Defendant. The Court should adopt the R&R's recommendation

---

[10] Plaintiff cites *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371–72 (N.D. Ga. 2006) in support of his assertion that "Georgia courts routinely hold that whether a plaintiff is an intended beneficiary presents a mixed question of law and fact." [Doc. 87 at 16-17.] However, neither the pin cite, nor the case as a whole, support Plaintiff's assertion.

to dismiss Plaintiff's breach of contract claim even though it did not engage with Plaintiff's minimally pled third party beneficiary theory.[11]

### iii.    The R&R correctly addresses Plaintiff's delegation theory.

Plaintiff objects to the R&R based on its "adopt[ion], without scrutiny, [of] the Falcons' argument that any obligation to compensate Plaintiff was entirely delegated to Emory." [Doc. 87 at 17.] Plaintiff's Objection (again) misunderstands and/or disregards the R&R. Contrary to Plaintiff's Objection, the R&R does not accept Defendant's theory that it delegated the duty to pay Plaintiff to Emory because *Defendant never argued a delegation or assignment theory to support dismissal of Plaintiff's breach of contract claim*. [*Id*.] Rather, a delegation theory was first raised in Plaintiff's Response in Opposition to Defendant's Motion to Dismiss. [Doc. 61 at 20 ("[T]he compensation provision, which assigns payment to [Emory], does not absolve the Atlanta Falcons of their obligations to ensure that payment for services rendered was properly made. . . . The Falcons' reliance on a

---

[11] Further, the SAC asserts contradictory allegations that make it unclear whether Plaintiff is alleging that he was a party to the Agreement or if he was third party beneficiary. For example, Plaintiff alleges "[he] was a party to the 2019 and 2023 Multi-Year Agreement" and that "[o]n or around March 27, 2023, [he] executed the 2023 Agreement after expiration of the 2019 Agreement." [Doc. 52 ¶¶ 306, 309.] Subsequently, Plaintiff summarily alleges "[he] was an intended third party beneficiary of the 2019 and 2023 Agreements." [*Id*.¶ 311.] The contradictory nature of Plaintiff's allegations could also be a reason why the R&R did not engage with Plaintiff's minimally pled third-party beneficiary theory.

contractual delegation of payment responsibility to the Emory Clinic does not negate their duty to ensure that Plaintiff was compensated.)".]

Ultimately, the 2019 and 2023 Agreements directly obligated Emory, not Defendant, to distribute the funds that Defendant paid to Emory for receipt of physician's work. [Doc. 72 at 74; Doc. 1-5 at 8; Doc. 1-6 at 8.] The R&R was correct when it found that this case does not present an issue of assignment or delegation and the Court should adopt the R&R's recommendation to dismiss Plaintiff's breach of contract claim.

### iv. The R&R correctly assesses the compensation terms of the Agreements.

Plaintiff erroneously objects to "the R&R's adopt[ion] [of] a narrow reading of the contract's compensation structure." [Doc. 87 at 17.] Plaintiff is (again) arguing that the R&R erred by accepting the clear and unambiguous compensation terms included in the Agreements. Plaintiff also goes as far as to argue that "[e]ven if the contracts contain language suggesting Emory played a payment role, nothing in the pleadings establishes that this arrangement was exclusive, exhaustive, or effectively enforced." [*Id.*] Plaintiff's Objection attempts to create a fact issue even though the facts are expressly outlined in the terms of the Agreements.[12]

---

[12] Plaintiff cites *Am. Casual Dining*, 426 F. Supp. 2d at 1372 to support his assertion that "[w]hether compensation for Plaintiff's services 'fell through the cracks' of the written agreements is precisely the kind of question that must be resolved after discovery, not at the motion to dismiss phase." [Doc. 87 at 18.] However, this case

Ultimately, for the reasons set forth above, the Court should adopt the R&R's recommendation to dismiss Plaintiff's breach of contract claim..

### E.    The R&R Correctly Recommended Dismissal of Plaintiff's Unjust Enrichment Claim.

#### i.    The R&R accurately applies Georgia law related to alternatively pleading equitable claims.

Plaintiff argues that the "R&R wrongfully concludes that Plaintiff's unjust enrichment and quantum meruit claims fail simply because the SAC acknowledges contracts between Emory and the Falcons." [Doc. 87 at 20.] "Unjust enrichment is an equitable concept and applies **when as a matter of fact there is no legal contract**, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." *Harris Ins. Agency, Inc. v. Tarene Farms, LLC*, 293 Ga. App. 430, 431 (2008) (emphasis added).

Plaintiff's Objection attempts to evade the R&R's recommendation of dismissal by doubling down on the fact that the unjust enrichment and quantum meruit claim is pled in the alternative to the breach of contract claim, if and only if, the Court finds that the Agreements do not fully govern the terms of compensation for Plaintiff's service. [Doc. 87 at 19.]  However, Plaintiff ignores well-established

---

does not address Plaintiff's assertion and it dismisses plaintiff's breach of contract claims.

case law that holds, "[a]lthough . . . it is permissible to assert alternative and inconsistent claims, [a plaintiff] cannot claim within a single count that there was an agreement and that the [defendant] was unjustly enriched." *Am. Casual Dining, L.P.*, 426 F. Supp. 2d at 1372 (holding that plaintiff could *not* simultaneously allege that it "conveyed a benefit on [defendant] by paying [defendant's] fees and expenses and also by duly performing its obligations under [three contracts]" while simultaneously alleging a claim for unjust enrichment.)

Similar to the plaintiff in *Am. Casual Dining, L.P.*, Plaintiff alleges, on one hand, that he "conferred valuable medical services directly on Falcons' players and was never compensated" [Doc. 87 at 19], while, on the other hand, expressly acknowledging the existence of the 2019 and 2023 Agreements (which govern the medical services Plaintiff provides to Defendant).[13] [Doc. 87 at 19.] *See Am. Casual Dining, L.P.*, 426 F. Supp. 2d at 1372 (opining that "it is evident that any benefit conferred upon [defendant] was triggered by provisions of a contract, the validity of which neither side challenges."). Consequently, because Plaintiff cannot sufficiently plead an unjust enrichment and quantum meruit claim in the alternative to his breach

---

[13]  Again, similar to the plaintiff in *Am. Casual Dining, L.P.*, Plaintiff's unjust enrichment and quantum meruit claim incorporates all of the factual allegations in paragraphs 1-151 of the SAC. [Doc. 52 at 101.] *See* 426 F. Supp. 2d at 1372 (holding that "because neither side disputes the existence of a valid contract, the unjust enrichment claim is improper.").

of contract claim, the Court should adopt the R&R's recommendation to dismiss Plaintiff's unjust enrichment and quantum merit claim.

### ii. The scope and application of the 2023 Agreement does not involve unresolved factual disputes.

Plaintiff erroneously argues (again) that the R&R "errs in assuming that the Falcons' payment obligations to Plaintiff are fully defined by the 2019 and 2023 contracts with Emory." [Doc. 87 at 20.] Plaintiff attempts to support this position by also arguing that "[n]othing in the agreements themselves clearly precludes the possibility that some services fell outside their express terms or that the Falcons retained obligations independent of Emory." [Doc. 87 at 20.] Plaintiff's rationale is nonsensical and would open the flood gates to *all* contracts being scrutinized based on the mere possibility that "some services fell outside the express terms." [*Id.*] Furthermore, Plaintiff's position is even more nonsensical when a contract like the 2023 Agreement is involved because it is even more evident that the benefit conferred "was triggered by provisions of a contract."[14] *Am. Cas. Dining, L.P.*, 425 F. Supp. 2d at 1372; *See Tidikis v. Network for Med. Commc'ns & Rsch. LLC*, 274

---

[14] Plaintiff's Objection references *Am. Cas. Dining, L.P*, 426 F. Supp. 2d at 1372, (again) to support the following statement: "[w]hether compensation 'feel through the cracks' is a factual question squarely governed by *American Casual Dining*, which held that unresolved issues of contractual coverage and benefit conferment preclude dismissal at this stage." Plaintiff's citation to *Am. Cas. Dining, L.P.* is erroneous because it does not support this statement. Rather, it supports the dismissal of unjust enrichment claims similar to Plaintiff's.

27

Ga. App. 807, 811, 619 S.E.2d 481, 485 (2005) ("[A]ny benefit conferred on the defendants was triggered by a provision in the contract, the validity of which neither [plaintiff] nor the defendants challenge. Under these circumstances, the unjust enrichment claim fails as a matter of law.")

Similar to the "delegation" and "assignment" arguments Plaintiff asserted in opposition to the R&R's recommendation to dismiss his breach of contract claim, Plaintiff argues, here, that "[e]ven if the Falcons later prove that they delegated payment responsibilities to Emory, that does not bar Plaintiff's right to equitable relief for services rendered and accepted without compensation." [Doc. 87 at 21.] In support of this argument, Plaintiff cites to *Dio Med. Corp. v. RC3 Innovations, LLC*, No. 1:23-CV-04810-JPB, 2024 WL 4497080, at *4 (N.D. Ga. Oct. 11, 2024), and provides the following summary via a parenthetical: "denying motion to dismiss unjust enrichment claim where the applicability of a contract remained uncertain." [Doc. 87 at 21.] Plaintiff's reference to *Dio Med. Corp.*, as well as the accompanying parenthetical, misrepresent the court's holding because the court found that Plaintiff could *not* state a claim of unjust enrichment. *Dio Med. Corp.*, 2024 WL at *4. Additionally, the Court in making its ruling pointed out that the plaintiff "never alleged that some of the products that it provided to [defendant] were outside the contract or even could have been outside of the contract." *Id.*; *see McKally v. Perez*, 87 F. Supp. 1310, 1317 (S.D. Fla. 2015) ("Plaintiff's Amended Complaint contains

28

no allegations that some of the products were provided outside of the contract. As a general rule, a plaintiff cannot amend its complaint through a brief in opposition to a motion to dismiss.").

Here, similar to the plaintiff in *Dio Med. Corp.*, Plaintiff's SAC does not set forth allegations in support of its unjust enrichment and quantum meruit claim that reflect Plaintiff was providing Defendant medical services outside of, or unrelated to, the 2023 Agreement. Rather, the SAC alleges that "[o]n or around February 2023 through May 11, 2023, the Atlanta Falcons requested the benefit of medical services and knowingly accepted the benefits. [Doc. 52 ¶ 338.] Notably, the time period identified by Plaintiff is applicable to the 2023 Agreement. Plaintiff cannot use the motion to dismiss briefing, nor his Objections to the R&R, to amend the allegations in the SAC.

### iii.  Compensation for Plaintiff's services provided to Defendant was covered by the 2019 Agreement and 2023 Agreements.

Plaintiff makes a last ditch effort to avoid dismissal of his unjust enrichment and quantum meruit claim by arguing that R&R ignores Plaintiff's allegation that "his services were not gratuitous and that both parties understood payment was expected" and, instead, recommends dismissal based on the assumption that Emory bore payment responsibility. [Doc. 87 at 22.]  Plaintiff's argument fails to appreciate that the R&R recognizes that Defendant, too, understood payment was expected, and

that Defendant's expectation was *based on or because of* the controlling Agreements. [Doc. 72 at 76.] Moreover, the R&R does not make any "assumptions" regarding Emory's payment responsibility. Rather, the R&R relies on the "2019 and 2023 Agreements both [which] contained provisions governing compensation." [*Id.*]

## IV.    CONCLUSION

For the reasons set forth above, and those in Defendant's Partial Motion to Dismiss Plaintiff's SAC, Defendant respectfully requests that the Court deny Plaintiff's Objection to the Magistrate Judge's Non-Final R&R, as detailed herein, and adopt the findings consistent with the R&R's "alternative" recommendation to dismiss all causes of action asserted against Defendant in the SAC with prejudice, except for Plaintiff's defamation claim (which was not addressed in Defendant's Motion to Dismiss Plaintiff's SAC).

Respectfully submitted this 29th day of August, 2025.

*/s/ Ronald B. Gaither*
Ronald B. Gaither (GA Bar No. 282292)
rgaither@bakerlaw.com
Eric L. Barnum (GA Bar No. 039305)
ebarnum@bakerlaw.com
Olivia S. Williams (GA Bar No. 804380)
owilliams@bakerlaw.com
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia 30309-7676
Phone: (404) 459-0050/Fax: (404) 459-5734

*Attorneys for Defendant, The Atlanta Falcons Football Club, LLC*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1, the undersigned certifies that The Atlanta Falcon's Football Club, LLC's Response to Plaintiff's Objection to the Magistrate Judge's Non-Final Report and Recommendation complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia and has been typed in Times New Roman 14 count.

This 29th day of August, 2025.

*/s/ Ronald B. Gaither*
Ronald B. Gaither
Georgia Bar No. 282292

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **THE ATLANTA FALCONS FOOTBALL CLUB, LLC'S RESPONSE TO PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

This 29th day of August, 2025.

/s/ Ronald B. Gaither
Ronald B. Gaither
Georgia Bar No. 282292

111044.000014\4899-7818-1220.1